# EXHIBIT A

# HERBERT W. EISENBERG, AIA
### 123 North Washington Street
### Boston, MA 02114

January 15, 2003

James L. Frederick, Esq.
Frederick & Associates
1330 Beacon Street
Brookline, MA 02146-3202

Re:   Judith Thibeau

Mr. Frederick, in accordance with your request and in your company, I visited the East Boston Neighborhood Health Center at 79 Paris Street, East Boston, Massachusetts where the Eye Clinic is located on the second floor. At the time of the visit I took photos of the stairs where Ms Thibeau fell on September 26, 2002. (Photos are enclosed). It is my understanding that Ms. Thibeau had been visiting the Eye Clinic that day and was leaving the second floor location via the stairs. Ms Thibeau's eyes had been dilated during her visit and, therefore, her vision was impaired at the time of descent. While descending and upon reaching the last tread of the stairs, the handrail ended with one riser left to descend. At this point, she stepped forward and her foot suddenly descended causing her to lose her balance, fall forward and be injured.

On entering the building there is an open stairway leading to the second floor, then a short aisle leading to the stairs on the right and around the corner on the left there is an elevator. The floor at the bottom of the stairs is covered with a black mat. The vision center is to the right at the top of the stairs. On leaving the Eye Clinic the stairs are straight ahead and the elevator is a sharp turn to the right. There are no signs directing people to the elevator and I have been informed that there is no warning to patients leaving the Eye Clinic to use the elevator if their eyes have been treated.

The Health Center is an existing building and is not required to upgrade its facility to meet current codes. If it were to undergo renovations or alterations the stair handrail would be required to extend beyond the last riser for the width of the tread plus 12 inches as shown in the enclosed page from the Massachusetts Architectural Access Board regulations. The Americans with Disabilities Act (ADA) regulations for architectural access require the same extension and the installation is clearly "readily achievable." Both of these documents are intended to assist the physically impaired and that include those who are visually impaired. Another relevant document is published by the Massachusetts Division of Capital Planning and Operations called "Design for Access, a guidebook for designing barrier free state and county buildings." A copy of page 54 is enclosed showing a typical handrail extension and commentary, noting that "Extending handrails horizontally beyond the top and bottom treads aids people who need support as they approach the stairs. This extension also warns visually impaired people that the stairway is ending."

A handrail is a significant safety factor that helps reduce the incidence and severity of stair accidents. The handrail may assist persons descending the stairs in maintaining their balance. The extension of the handrail at the bottom is extremely important, especially for those who are visually impaired. The

tel 617.742.3154   fax 617.227.1086   herbeisenberg@alum.mit.edu

ending of the handrail signals the end of the stairs which is normally at the landing level and the expectation would be that the next step is on a landing platform or floor. On reaching the floor, or landing level, the body center of gravity would be moving forward for a straight step ahead instead of descending for a step down. In this case, the handrail is a contrasting color from the wall and close to eye level than the steps and floor below. The horizontal extension would indicate that the landing had not been reached and the last step would be down to the floor level where the adjustment of balance and gait for level walking could commence. In this case, Ms. Thibeau arrived at the end of the handrail before reaching the floor landing and the fall was inevitable.

Therefore, it is my opinion, based on my experience as an architect and on research related to stair safety in published codes, articles and books, that the fall and injury to Ms Thibeau while she was descending the stairs in a visually impaired condition was due to the lack of the handrail extension and, also, to the failure of the Eye Clinic to instruct persons in an impaired condition to use the elevator and not the stairs. It is further my opinion that the lack of such handrail extension constitutes a dangerous condition, especially for visually impaired persons such as Ms. Thibeau. Common sense for the safety of persons who have a temporary visual impairment would have dictated the installation of the handrail extension for the visually impaired. In addition, there should have been large print warning and directional signs to the elevator door at the second floor lobby for the use of persons with temporary impairment due to treatment.

Herbert W. Eisenberg,, CSI/CDT
Life Safety Specialist

Photo 1 - The top of the stairs when leaving the Eye Clinic. Note the prominent sign directing you to the stairs.

Photo 2 - Middle of the last flight of stairs leading to floor level below.

Photo 3 - View of the handrail ending at the wall. There is no handrail extension beyond the leading edge of the last tread.

2



Handrails
Figure 27c

27.4.2 Height: Top of handrail gripping surface shall be mounted between 34 inches (34" = 864mm) a 38 inches (38" = 965mm) above stair nosings.

27.4.3 Extensions: Where handrails terminate at the top and bottom of a stair run, they shall ha extensions that comply with the following:

  a. At the top, extend at least 12 inches (12" = 305mm) beyond the top riser and parallel with t floor or ground surface. See Fig. 27d.



Handrail Extensions
Figure 27d

  b. At the bottom, extend at least 12 inches (12" = 305mm) plus the width of one tread beyond t e bottom riser. The handrail shall continue to slope for a distance of the width of one tread fro n the bottom riser; the remainder of the extension shall be horizontal. See Fig. 27e.
  c. Handrail extensions need not extend if it would cause a safety hazard or if *space* does not perm . Extensions shall comply with 521 CMR 20.6, Protruding Objects.

27.4.4 Size: The handgrip portion of the handrail shall not be less than 1¼ inches nominal (1¼" = 32mm ) nor more than 1½ inches nominal (1½" = 38mm) in diameter.

27.4.5 Shape: The handgrip portion of the handrail shall be round or oval in cross-section. See Fig. 24c

## Stairs and Handrails

**Handrail Location**

Handrails give essential support and guidance to stair users. Rails are required on both sides of the stairs because some people, including those who have had strokes, have strength on only one side of their body. They need to use railings on both sides of the stair depending on whether they are going up or down.

Mount handrails 34 inches above the intersection of the tread and the riser. In buildings where stairs will be used extensively by children, such as day-care centers and schools, a second, lower handrail is needed at 19 inches.

*28.3 Handrails shall be set on both sides of such stairs at a height of thirty-four (34) inches above the intersection of tread and riser.*

**Handrail Extension**

Extending handrails horizontally beyond the top and bottom treads aids people who need support as they approach the stairs. This extension also warns visually impaired people that the stairway is ending.

If handrails exist but do not have horizontal extensions, the handrails should be modified or replaced. If horizontal extensions cannot be installed on both handrails, they should be installed on at least one.

*28.3 ...Wall rails on each set of such stairs shall extend at least twelve (12) inches beyond the top and bottom nosing at a height of thirty-four (34) inches above the floor or landing, but need not so extend if it would cause a safety hazard or if space does not permit.*



Handrail at Stairs

Ideally, handrails should be continuous at landings. This provides a continous "shoreline" for visually impaired people who navigate by touch.

On switch-back stairs handrail extensions are not required between the two flights if they would impede travel or create a hazard on the landing.





# Herbert W. Eisenberg, AIA, CSI/CDT

| | |
|---|---|
| **TITLE** | Building Code and Life Safety Specialist |
| **EDUCATION** | Thayer Academy<br>Massachusetts Institute of Technology- B.S., Business and Engineering Administration (Sloan School)<br>Design Courses at MIT and Boston Architectural Center |
| **ARCHITECTURAL REGISTRATION** | Massachusetts (1961-present). Vermont, New Hampshire, Maine, Rhode Island, Connecticut, New York, and Florida (1961-1987) |
| **CERTIFICATION** | CSI Certified Document Technician (CDT)<br>National Council of Architectural Registration Boards (NCARB) (1961-1987 |
| **PROFESSIONAL ASSOCIATIONS** | American Institute of Architects (AIA)<br>American Society of Safety Engineers (ASSE)<br>Boston Society of Architects (BSA)<br>Construction Specifications Institute (CSI)<br>Construction Panel, American Arbitration Association (AAA) (1983-2003)<br>Mass. Construction Industry Board (MCIB), Past President<br>National Fire Protection Association (NFPA)<br>New England Building Code Association (NEBCA), Past President |
| **PROFESSIONAL COMMITTEES** | AIA Building Performance and Regulations (BP&R): (1965 – 2001)<br>NFPA - Fire Prevention Code (NFPA 1) (1976 – 1996)<br>American National Standards Institute - Safety During Construction and Demolition Work (ANSI-AIO) (1976 - 1997)<br>BSA - Codes and Standards Committee<br>BSA – Building Enclosure Council<br>BSA – Indoor Air Quality Committee |
| **PROFESSIONAL EXPERIENCE** | From 1952 to 1956, field engineer, supervisor and project coordinator for a construction company. From 1961 to 1987, sole owner and partner at Eisenberg Haven Architects. From 1987 to date, self-employed as consultan . From 1967 active in building codes and standards on local and national committees.<br><br>Code consultant to architects and developers for major projects. Provided expe  witness services on construction failures, contract disputes, building codes and standa r , and water penetration of exterior walls. Lecturer at seminars on building codes, ma onry veneers, building construction, life safety and fire protection.<br><br>Current affiliations as Senior Advisor for the Sullivan Code Group of Robert V. Sullivan Engineers and Senior Vice President of Eisenberg Haven Architects.<br><br>Co-Author of several publications, including; Revised City of Boston Building ode - Adopted 1970, Town of Watertown Building Code - Adopted 1972, Field Gu d  for Masonry Practice of the Manganaro Corporation - 1983, Model Zoning and Eu ling Code for Signs (unpublished) and One Code: A Program for Building Regula o  Reform, AIA Task Force on Building Regulation – 1975 |

# Herbert W. Eisenberg, AIA
### 123 North Washington Street
### Boston, MA 02114

List of Depositions and Trials from June 15, 1999 to September 28, 2005

Depositions:

Fletcher v Sears by Attorney William Bixby, June 30, 2003

Greenlaw v Amaral by Attorney Ellen B. Kaplan, April 3, 2002

Lowe v Bartlett by Attorney John A. Tinney. July 14, 2000

Brody v Philopolous by Attorney Donna Baron. October 24, 1999

Trials:

Frank N. Jones v Golder Goldfarb, Kline & Associates for Attorney Kenneth Griffin. Suffolk County Superior Court Civil Action No. 95-2232B. August 25, 2001

Mey v Papadopolous for Attorney Richard E. McCue. Lowell District Court. June 15 and 16, 2000.

Berg v National Amusement for Attorney Scott Behman. Suffolk County District Court. December 16, 1999

Mary Caldwell Thompson v Running Arts, Inc. for Attorney Susan Callahan. Middlesex Superior Court. December 14, 1999

Note: Prior to August of 1999 I was employed by the Sullivan Code Group, 302 Union Wharf, Boston, MA as a building code consultant and I did not testify at trials or depositions from June 15 1998 to October 24, 1999.

codes and standards; building envelope; peer review
tel 617.742.3154  fax 617.227.1086  herbeisenberg@alum.mit.edu