UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JUDITH THIBEAU, | ) | |
| And GEORGE THIBEAU, | ) | |
|     Plaintiffs | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION |
| | ) | NO. 04-10643 LTS |
| UNITED STATES OF AMERICA | ) | |
| and EAST BOSTON NEIGHBORHOOD | ) | |
| HEALTH CENTER CORPORATION, | ) | |
|     Defendants | ) | |

**MOTION OF DEFENDANT,
EAST BOSTON NEIGHBORHOOD HEALTH
CENTER CORPORATION, TO AMEND ANSWER
TO ADD AFFIRMATIVE DEFENSE**

NOW COMES the defendant, *East Boston Neighborhood Health Center Corporation* ("EBNHC") and hereby moves to amend its Answer to add an affirmative defense. As more fully set forth below, EBNHC is a charitable organization under Massachusetts law and is thus entitled to the charitable cap set forth in G.L. c. 231 §85K (**Exh. 10**), mandated by the Massachusetts Legislature as to a certain claim being brought by the plaintiffs in this consolidated action. As leave is to be freely given pursuant to Rule 15 of the Federal Rules of Civil Procedure, the amendment to the Answer must be allowed.[1] As further grounds for this Motion, defendant states as follows:

1.    Plaintiffs, Judith and George Thibeau, initiated an action against EBNHC in or about April, 2004, in the Suffolk Superior Court. (**Exh. 2**) In their state Complaint, plaintiffs' alleged that plaintiff, Judith Thibeau, fell and injured herself while at the Eye Clinic at EBNHC

---

[1] The proposed answer is attached as **Exh. 1**.

1

973725v1

on September 24, 2002.  Id.  The fall is alleged to have occurred while Mrs. Thibeau was walking down the stairs at the Eye Clinic after having her eyes examined and dilated.  Id.

2. The Complaint predominantly sets forth professional negligence claims as to EBNHC's care providers who provided eye care to Mrs. Thibeau.  It is alleged that the EBNHC care providers should have warned Mrs. Thibeau about the consequences and effect of dilation on Ms. Thibeau's vision; failed to warn Mrs. Thibeau that visual impairment caused by the dilation would create a risk of harm in walking down the stairs; failed to warn or advise that there was an alternative to using the stairs, (i.e., an elevator); failed to obtain Mrs. Thibeau's informed consent of the risk of her eye procedure (dilation) and that EBNHC failed to provide an adequate handrail.  Id.

3. Plaintiffs subsequently filed an Amended Complaint in federal court in or about October, 2004 containing the same allegations as in the state court complaint but naming the United States as a defendant under the Federal Tort Claims Act ("FTCA").  (**Exh. 3**)

4. The federal complaint was filed after plaintiffs were informed by undersigned counsel that EBNHC is a federally funded community Health Clinic and is entitled to coverage under the FTCA. 28 U.S.C. 1346(b)(1); 42 U.S.C. 233(a)(g)(1)(A).  The FTCA is the exclusive remedy for plaintiffs' professional negligence claims against the EBNHC.  42 U.S.C. 233(a).

5. EBNHC subsequently removed the state court action and both the state and federal actions were consolidated as the allegations predominantly centered on the professional negligence (i.e. failure to warn and provide informed consent).

6. The Department of Justice subsequently appointed counsel to represent the United States as to the professional negligence claims.

973725v1

7. The parties engaged in certain discovery primarily directed to the professional negligence claim and just recently exchanged expert reports. Indeed, plaintiffs just recently provided expert reports, one of which, for the first time, sets forth the basis for the alleged defects in the premises apart from the professional negligence claims. Trial is scheduled for January 30, 2006.

8. The EBNHC is a non-profit charitable organization which provides health care services to the public primarily in the Chelsea, Revere, East Boston and Winthrop areas since 1970. The EBNHC's express purpose is to provide health care services which has long been recognized as charitable. See e.g., Conners v. Northeast Hospital, Corp., 439 Mass. 469, 474 (2003) and cases cited; see also Rivera v. University Massachusetts Memorial Healthcare, 2005 Mass. Super LEXIS 471 (September 16, 2005)(**Exh. 4**); see also **Exh. 5** (mission of EBNHC is to "provide easily accessible, affordable, appropriate, high quality, personalized, coordinated primary care for all who live and work in East Boston and the surrounding communities without regard to age, income, insurance status, language, culture or social circumstances"); **Exh. 6** (articles of incorporation).

9. M.G.L.c. 231, §85K provides that the tort liability of a charitable organization is capped at $20,000. See Connors, 439 Mass. at 474; Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 391 (2005). Moreover, Hospitals and Healthcare Centers are "quintessentially" the types of organizations the legislature intended to benefit from the operation of the charitable immunity cap. Connors, 439 Mass. at 473; Rivera supra at p. 4-5 (**Exh. 4**).

10. Pursuant to the Local Rules, undersigned counsel contacted plaintiffs' counsel by phone on Friday November 11, 2005 advising plaintiffs' counsel of the applicability of the G.L.c. 231, § 85K to the premises tort claim (not the professional negligence claim) and that the

EBNHC would be filing a motion to amend its answer to add the statutory cap as an affirmative defense. See Affidavit of Tory A. Weigand (**Exh. 7**). Undersigned has provided plaintiffs with EBNHC's Article of Incorporation and mission statement and has offered to provide any other relevant documents in EBNHC's possession related to EBNHC's charitable status that plaintiffs might wish to see. Undersigned counsel also offered to allow plaintiffs to submit additional document requests and interrogatories on the charitable status of EBNHC with EBNHC providing responses within seven (7) days of receipt of the request. Undersigned also offered to allow plaintiffs to take any additional depositions of EBNHC personnel desired by plaintiffs as to the charitable status issue. Any and all discovery can be provided in a day's time. Plaintiffs' counsel informed undersigned counsel that he would review the motion upon receipt but would be opposing the requested amendment. Weigand Aff. (**Exh. 7**).

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." The United States Supreme Court has stated the liberal amendment policy of Rule 15(a) is a mandate to be heeded. United States v. Houghman, 364 U.S. 310, 316-17; Forman v. Davis, 371 U.S. 178, 182 (1962). "Rule 15 was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result and that the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel maybe decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Houghman, 364 U.S. at 316-17 citing Conley v. Gibson, 355 U.S. 41, 48.

973725v1

EBNHC's motion to amend to add the charitable cap must be allowed as such amendments are to be freely given, as any delay was inadvertent, as the statutory charitable cap clearly applies, is not a futile defense, and as there is no prejudice to the plaintiffs.

Under G.L. c. 231, §85K tort liability of a charitable organization is capped at $20,000, unless the organization's activities are "primarily commercial in character." See <u>Ayash v. Dana-Farber Cancer, Inst</u>., 443 Mass. 367, 391 (2005); <u>Connors</u>, 439 Mass. 469 and cases cited. If the entity is a charity and if any injury that it may be responsible for under the principles of tort law occurred in the course of an activity designed to accomplish in a direct manner its charitable purpose, the legislatively mandated cap applies. <u>Connors</u>, 439 Mass. 469; <u>Rivera</u>, *supra* at 4-5 (**<u>Exh. 4</u>**).

Hospitals and healthcare centers are "quintessentially the types of organizations that the legislature intended to benefit from the operation of the charitable immunity cap law." <u>Rivera</u>, *supra*, at 4 (<u>Exh. 2</u>) citing <u>Connors</u>, 439 Mass. at 473; <u>see also</u>, <u>English v. New England Medical Center</u>, 405 Mass. 423 (1989); <u>Harlow v. Chin</u>, 405 Mass 697 (1989)(reducing verdict to $20,000); <u>Goldberg v. Northeastern University</u>, 60 Mass. App. Ct. 707 (2004)(charitable immunity cap applied to university healthcare center); <u>Simpson v. Truesdale Hosp., Inc., 338 Mass 787 (1958)</u>; <u>Roosen v. Peter Bent Brigham Hosp</u>., 235 Mass. 66 (1920).

In <u>Connors</u>, the Supreme Judicial Court reaffirmed the applicability of the charitable cap under G.L. c. 231, §85K to healthcare provider institutions. There, the plaintiff seriously injured her leg when she fell in a parking lot of a hospital campus maintained by the hospital. 439 Mass. 469. The Court found that the hospital was clearly a charity and that the injury occurred in the course of an activity designed to accomplish in a direct manner its charitable purpose. <u>Connors</u>, 439 Mass. at 472-480. According to the Court, "[t]he promotion of health remains, as it long

5

has, a charitable purpose." 439 Mass at 477. Moreover, the Supreme Judicial Court made clear that large non-profit health organizations whether funded in substantial part by insurance, the government and private pay are still subject to the charitable cap mandated by the legislature." Id. Indeed, "neither the size of an organization such as a hospital nor simply the revenue generating nature of the activity in question detracts from the organization's charitable status under G.L.c. 231, §85K." Id. at 477. In fact, "there is….no requirement that a hospital [or healthcare center] provide free care to retain its charitable status." Id. at 475; Rivera, supra, at 5 (Exh. 2)(holding that assault against plaintiff working at hospital subject to G.L. c. 231, §85K).[2]

EBNHC is clearly a charitable entity with an express mission of providing accessible high quality healthcare whether people have the ability to pay or not. See Goldberg, 60 Mass. App. Ct. at 712 ("when corporation presents a charter that shows the corporation to be charitable that charter is prima facie evidence of the corporation's charitable purpose and function"); **Exh. 5** (Mission Statement) (EBNHC Mission Statement: "to provide easily accessible, affordable, appropriate, high quality, personalized, coordinated primary care for all who live and work in East Boston and the surrounding communities without regard to age, income, insurance status, language – culture or social circumstances"); **Exh. 6** (Articles of Incorporation). The provision of healthcare to the public has long been recognized as charitable. See Conners, 439 Mass. at 474 and cases cited; Rivera, 2005 Mass Super LEXIS 471 (**Exh. 4**). As set forth, in the deposition testimony and affidavit of Dr. James Taylor the Medical Director and founder of the EBNHC, EBNHC has always provided healthcare services and which services are directed to the low income and poor. EBNHC, in fact, provides healthcare services regardless of ability to pay. Taylor Aff. at ¶¶ 1-9 (**Exh. 5**); Taylor Depo. at 88 (**Exh. 6**)

---

[2] The fact that a hospital or health clinic like EBNHC has a policy of liability insurance is irrelevant to the issue of charitable immunity under the statute. Johnson v. Wesson Woman's Hospital, 367 Mass. 717, 719 (1975) and cases cited

In addition to EBNHC being clearly a charity under G.L. c. 231, §85K, there is no dispute that the injury to Mrs. Thibeau to which the plaintiffs seek to hold EBNHC responsible in tort occurred in the course of EBNHC's charitable purpose. There is no dispute that Mrs. Thibeau suffered her fall following her receipt of medical care for her eyes at EBNHC and while walking down stairs in the building. As such, the alleged tort injury (allegedly falling due to a purportedly faulty handrail) occurred during the course of an activity that directly accomplished EBNHC's purpose—i.e. provision of healthcare. See Connors, 439 Mass. at 477-80; Rivera, supra at 8 (Exh.  ). Accordingly, the tort claim against EBNHC is the "quintessential" type of claim the Massachusetts legislature intended to be covered by the statute.

Further, there is no prejudice to the plaintiffs in allowing the amendment. Hougham, 364 U.S. 310.[3] Indeed, the primary allegations of the plaintiffs pertain to the alleged negligence of the EBNHC's care providers in not providing sufficient warnings about the eye care and dilation and lack of informed consent. See Complaints. The claims are that EBNHC care providers should have; warned Mrs. Thibeau about the consequences and effect of dilation on Mrs. Thibeau's vision; warned Mrs. Thibeau that visual impairment caused by the dilation would create a risk of harm in walking down the stairs; warned or advised that there was an alternative to using the stairs (i.e. an elevator); and otherwise failed to obtain Mrs. Thibeau's informed consent of the risk of her eye procedure (dilation). All of these allegations and claims are part of

---

[3] Any delay in seeking an amendment was inadvertent and delay alone should not be deemed sufficient under the facts here to deny leave to amend especially where there is no prejudice to the plaintiffs. See e.g. Harrison v. Rubin, 174 F.R.D. 249 (D.C. App. 2004); Doherty v. Davy Songer, Inc., 195 F. 3d 919 (7th Cir. 1999); Morales v. Schofield, 174 F.R.D. 253 (E.D. N.Y. 1997)' see also Warsau v. Underwriters Ins. Co. v. Shister, 190 F.R.D. 341 (E.D. Pa. 1999)(undue delay refers to delay in proceedings not to delay in amending pleading). Notably, EBNHC removed the state court action due to the fact that the complaint predominantly alleged professional negligence claims surrounding assertions that Mrs. Thibeau should have been warned and did not provide informed consent. It was undersigned counsel who advised plaintiffs' counsel that such claims were covered by the FTCA. The only non-professional claim is the assertion that the handrail on the stairs is defective in that it should have extended beyond the end of the stairs. Plaintiffs only recently provided an "expert" report asserting the basis for this theory. Notably, it is not disputed that the building at 79 Paris Street is exempted from the building code. The plaintiffs' expert opinion is the subject of EBNHC's motion for summary judgment which is being filed with the court on November 14, 2005.

the plaintiffs' professional negligence claims which claims are unaffected by the charitable cap as they are governed by the FTCA. See e.g., Mullins v. Pine Manor College, 389 Mass 47 (1989). Notably, virtually all of the discovery taken to date was necessary and related to the professional negligence claims against the United States. The charitable immunity cap is not applicable to these claims. The cap is only applicable to the premises liability claim (i.e. handrail should have extended beyond the end of the stairs) the basis for which was only recently provided by plaintiffs through their expert report of a Mr. Eisenberg, an architect.[4]

Further, the charitable status of the EBNHC is of no surprise to the plaintiffs as the plaintiffs deposed EBNHC's Chief Medical Officer, James Taylor. M.D. who testified in depth about the structure and origin of the EBNHC; its 501C non-profit status as well as its express mission "is to attain easily accessible high quality healthcare whether people have the ability to pay or language obstacles." Taylor Depo. at 1-23; 32-35; 42-46; 85; 88 (**Exh. 8**); Taylor Aff. ¶¶ 1-9 (**Exh. 9**). Moreover, discovery (including the lease that was provided to plaintiffs) disclosed that the building where Mrs. Thibeau fell is owned by the George Robert White Fund a "charitable trust dedicated to 'creating works of public utility and beauty for the use and enjoyment of the inhabitants of Boston." (**Exh. 11** at page 1). The building is leased by this charity to the EBNHC for one dollar and for use as to "health care, counseling and social services" and cannot be used for private financial gain. (**Exh. 11** at page 2).

To deny the defense to EBNHC would severely prejudice EBNHC as it is a long standing non-profit charitable healthcare provider who provides various healthcare services to the poor

---

[4] Mr. Eisenberg claims that although the building at 79 Paris Street is exempted from the building code, the handrail on the stairway should have extended beyond the end of the stairs and that such an extension would have prevented Mrs. Thibeau's fall. This opinion is the subject of EBNHC's motion for summary judgment under Daubert and related principles.

and low income and who the Massachusetts Legislature expressly intended to provide a cap on tort liability.

Finally, while the applicability of the charitable cap to the non-professional negligence claim against EBNHC has become clear through discovery, EBNHC has offered the plaintiffs to conduct any further discovery on this issue that they might desire.  See Weigand Aff. at ¶¶ 5-6 (**Exh. 7**).  EBNHC, through counsel, has offered to provide whatever documents plaintiffs would like to see (which have not already been provided) as well as answers to any additional interrogatories the plaintiffs wish to ask and provide responses within seven days of receipt.  Id. EBNHC also offered to allow plaintiffs to conduct any depositions of any EBNHC personnel on the charitable status issue.  Id.  Any such discovery can be accomplished in a matter of days if not a single day.  There is no prejudice to the plaintiffs' in allowing the amendment and ensuring that the case is resolved on the merits and applicable law.

## CONCLUSION

Given the liberal policy and directive that amendments are to be freely given, the lack of any prejudice to the plaintiffs, the clear applicability of the legislative cap to the non-professional negligence claim and the need for cases to be decided on the merits, EBNHC respectfully

requests that its Motion for Leave to add G.L. c. 231, 85K as an affirmative defense be ALLOWED.

    Respectfully submitted,

    *The Defendant,*

    **East Boston Neighborhood Health Center Corporation**

    By its attorneys,

    **MORRISON MAHONEY LLP**

    /s/ Tory A. Weigand
    _____

    Tory A. Weigand, B.B.O. No. 548553
    Charles M. Urso, B.B.O. No. 647748
    250 Summer Street
    Boston, MA 02210
    (617) 439-7500

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, a true copy of the above document was served upon each counsel of record electronically through filing with the ECF system.

    /s/ Tory A. Weigand
    _____

    Tory A. Weigand

973725v1