**EXHIBIT 10**

LEXSTAT MACODE 231 85K

ANNOTATED LAWS OF MASSACHUSETTS
Copyright (c) 2005 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

\*\*\* THIS DOCUMENT IS CURRENT THROUGH CHAPTER 120, 10/27/05 \*\*\*
\*\*\* WITH THE EXCEPTION OF CHAPTERS 90, 91, 99 AND 106 \*\*\*

PART III. COURTS, JUDICIAL OFFICERS AND PROCEEDINGS IN CIVIL CASES
TITLE II. ACTIONS AND PROCEEDINGS THEREIN
CHAPTER 231. PLEADING AND PRACTICE
HEARING OR TRIAL
EVIDENCE

**GO TO MASSACHUSETTS CODE ARCHIVE DIRECTORY**

*ALM GL ch. 231, § 85K* (2005)

§ 85K. Tort Liability of Charitable Organizations, etc.

It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or, association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs. Notwithstanding any other provision of this section, the liability of charitable corporations, the trustees of charitable trusts, and the members of charitable associations shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.

No person who serves as a director, officer or trustee of an educational institution which is, or at the time the cause of action arose was, a charitable organization, qualified as a tax-exempt organization under *26 USC 501*(c)(3) and who is not compensated for such services, except for reimbursement of out of pocket expenses, shall be liable solely by reason of such services as a director, officer or trustee for any act or omission resulting in damage or injury to another, if such person was acting in good faith and within the scope of his official functions and duties, unless such damage or injury was caused by willful or wanton misconduct. The limitations on liability provided by this section shall not apply to any cause or action arising out of said person's operation of a motor vehicle.

**HISTORY:** 1971, 785, § 1; 1987, 238

**NOTES:**

EDITORIAL NOTE-
Section 2 of the inserting act provides as follows:

Section 2. Nothing in section eighty-five K of chapter two hundred and thirty-one of the General Laws, inserted by section one of this act, shall be construed to enlarge any protection from tort liability afforded by the common law of the commonwealth prior to the effective date of this act.

The 1987 amendment added the second paragraph, relating to the liability of a person serving as a director, officer or trustee of certain educational institutions.

CROSS REFERENCES--

# EXHIBIT 11

# THE GEORGE ROBERT WHITE FUND
# LEASE AGREEMENT
# WITH EAST BOSTON HEALTH CENTER INCORPORATED

This lease agreement (the *"Lease"*) is entered into and executed this _____ day of _____, 1997, by and between the City of Boston acting by and through the Trustees of the George Robert White Fund, (the *"Lessor"*), and the East Boston Health Center Incorporated, having its principal address at 495 Pleasant Street, Winthrop, Massachusetts 02152 (the *"Lessee"*).

WHEREAS, George Robert White donated to the City of Boston a permanent charitable trust dedicated to *"creating works of public utility and beauty for the use and enjoyment of the inhabitants of the City of Boston"*, and

WHEREAS, the Lessor has from time to time expended income from the George Robert White Fund to build or to purchase property to be used for such purposes, and

WHEREAS, the Lessor holds in trust the building and surrounding property located at 79 Paris Street in the East Boston District of Boston, (hereinafter, the *"Facility"*), and

WHEREAS the Lessee maintains licensing and regulatory control over the operations of the Lessee, and

WHEREAS, the Lessee operates a health care center on the premises of the Facility for this purpose, of delivering health care services to the East Boston community, and the Lessor is willing to grant the Lessee continued use of the Facility;

NOW THEREFORE, in consideration of the foregoing and in consideration of the mutual covenants and conditions herein, the Lessor and Lessee hereby agree as follows:

Article I        Title to the Facility

The Lessor has accepted and at all times shall hold title to the land and the Facility.

Article II       The Facility

The Lessor hereby leases the Facility, a three story masonry building located at 79 Paris Street, East Boston containing approximately 17,000 sq. ft. of net usable space.

Article III        Rent

The Lessee shall pay the Lessor on or before the commencement date of the Lease five ($5.00) dollars rent for the lease term.

Article IV        Term of the Lease

The term of the Lease shall be five (5) years, beginning July 1, 1997 and ending June 30, 2002, unless terminated sooner or renewed in accordance with the provisions hereof.

Article V        Use of the Facility by the Lessee

   A.   Use

   The Lessee shall use the Facility according to the terms and conditions of this Lease for services and programs which shall include but not be limited to health care, counseling and social services.

   B.   Modifications

   Any changes, modifications, or alterations to the aforementioned use of the Facility must receive the prior written approval of the Lessor.

   C.   Restrictions

   The Lessee shall use the Facility in conformity with the following restrictions and requirements:

   1.   The Lessee shall neither use nor permit the Facility to be used for private financial gain.

   2.   The Lessee shall neither permit the Facility to be overloaded, damaged, stripped, defaced nor to suffer waste.

   3.   In using the Facility, the Lessee shall comply with all applicable laws and in said use shall not discriminate on the basis of race, religion, sex, or national origin.

   D.   Acknowledgments

   1.   For utilizing the Facility for a nominal fee, the Lessee agrees that in any correspondence, brochures and publications it issues that the Lessee will acknowledge and publicize that the George Robert White Fund owns the Facility.

   2.   Lessee further agrees that in any financial reporting, statements and correspondence it issues that it will acknowledge in writing that its use of the Facility is a *"gift-in-title"* from the George Robert White Fund and that the annual value of this gift is equal to $10.00 per square foot or $170,000 annually and $850,000 over the term of this lease.

2

Article VI    Subletting, Assignments, Licenses

The Lessee may not assign this Lease, sublet the Facility or any part thereof, license or use the Facility for any purpose not provided for in this Lease without the prior written approval of the Lessor.

Article VII    Assessment Surveys

Prior to the execution of this Lease, the Lessee shall have completed the *Lessee Assessment Survey* attached hereto as *Appendix A*, incorporated herein, providing all information requested.

Article VIII    Reporting Requirements of the Lessee

    A.    Annual Reporting Requirements

Within five months of the close of each fiscal year during the term of the Lease the Lessee shall submit to the Lessor annually:

1. A report of the condition of the Facility naming specifically:

    a) Known problems and defects in the structure(s) of the Facility and its surrounding grounds, parking lots, sidewalks, entrance ways, heating, electricity, and plumbing.

    b) Any other capital needs of the Facility.

2. A report of any changes in the Lessee's services, financial condition or insurance policy.

3. A copy of the Lessee's insurance policy binder which clearly details the policy in force as outlined in Article XII.

4. A statement by the Lessee describing any litigation or legal problems affecting or involving the Facility.

5. Prior to the commencement of each fiscal year, the Lessee shall submit to the Lessor its total organizational and operating budget in respect to the Facility. The Lessee shall also submit its budget for maintaining the Facility to the Lessor.

    B.    Annual Reporting Requirements

Every twelve (12) months during the term of the Lease, the Lessee shall fully complete the *Lessee Annual Reporting Form*, attached hereto as *Appendix B*, incorporated herein, providing all the information requested. This report is due **no later than** five (5) months after the close of the Lessee's fiscal year.

3

Article IX    Maintenance and Routine Repair of the Facility

    A.    Obligation of the Parties

The Lessee at its own expense shall fully maintain, and make all routine repairs to the Facility preserving said Facility in a condition at all times acceptable to the Lessor. The maintenance and repair responsibilities of the Lessee shall include but are not limited to:

1. Necessary maintenance and routine repairs to heat, hot water, plumbing, carpentry, the roof, windows, care of the grounds, any maintenance and repair work necessary to comply with applicable laws. Necessary maintenance and repairs constitute those required for the safety of the Facility, its occupants, or the general public and any maintenance and repairs necessary to prevent undue deterioration of the Facility, or the absence of which would result in significant interference with essential building operations. Necessary maintenance and repairs will be determined by the Lessor in consultation with the Lessee. The Lessee will not obligate the Lessor for any repair, alteration, or improvement.

2. All custodial and janitorial services.

3. The Lessee shall maintain the Facility, the mechanical equipment, the surrounding grounds, and common areas in a clean, sanitary, and satisfactory condition.

4. The Lessee shall be responsible for all trash and rubbish removal and disposal and for removing all snow and ice from the sidewalks, handicap access ramp(s), parking lot(s), and driveway(s) of the Facility and its perimeter.

5. The Lessee shall hire, discharge, and supervise the work of all persons employed by it for the cleaning, maintenance, operation and security of the Facility fixing the terms of each person's employment. The Lessee shall bear all costs of each person's employment, including without limitation, wages, employer's taxes, worker's compensation insurance, bookkeeping charges, and out-of-pocket expenses.

6. The Lessee shall repair all damage resulting from vandalism including graffiti, intentional and negligent acts of the Lessee, its agents, employees, and all other authorized users.

7. The Lessee shall maintain and repair the electrical, plumbing and HVAC systems in proper working order.

8. The Lessee shall maintain any flagpole or flagpoles on the Facility or its grounds in good working order and ensure that the flag of the United States is appropriately displayed. If the Facility has two poles the municipal flag of the City of Boston is also to be appropriately displayed. The cost of these flags is the responsibility of the Lessee.

4

The Lessee agrees that all work performed on the Facility under any provision of this Lease shall be of quality at least equal to the initial construction of the Facility. The Lessee also agrees not to permit any mechanics' liens or similar liens to be placed upon or to remain upon the Facility for labor and material provided to the Lessee or claimed to have been provided to the Lessee for work of any kind performed at the Lessee's direction and the Lessee shall cause any such lien to be released of record forthwith without cost to the Lessor.

B. <u>Lessor's Rights</u>

In addition to any other remedy under this Lease, if the Lessee fails adequately to perform the maintenance and repairs required under this Lease, then, upon reasonable prior written notice to the Lessee, the Lessor may perform the necessary maintenance or repairs and the Lessee will forthwith reimburse the Lessor the cost of the maintenance or repairs.

Article X    <u>Structural Repairs and Capital Improvements to the Facility</u>

A. <u>Lessor's Obligations</u>

Subject to its budgetary limitations, the Lessor will make all necessary and major repairs, alterations, replacements, and capital improvements to the Facility. Necessary and major repairs constitute those which in the opinion of the Lessor exceed the routine maintenance and repairs described in Article IX, provided further that such is required for the safety of the Facility, its occupants, the general public, or required to avoid significant interference with the use or operation of the Facility. Unless provided otherwise in this Lease, this provision shall include major repairs and replacements of the heating plant, electrical system, plumbing, structure, and roof. Nothing in this Article shall prevent the Lessor from assuming additional obligations regarding structural repairs, alterations, replacements, additions or improvements to the Facility and/or its grounds that the Lessor deems appropriate.

B. <u>Lessee's Obligations</u>

The Lessee will notify the Lessor in the annual reports required under Article VIII or sooner of any structural repairs or improvements which may need to be made. The Lessee may neither cause such work to be commenced nor obligate the Lessor to pay for such work without the prior written consent of the Lessor.

Any structural repairs, alterations, replacements, additions or improvements not the Lessor's obligation shall be the Lessee's sole obligation to perform in its discretion, provided the Lessee receives the prior written approval of the Lessor and that of any other necessary regulatory agencies. The Lessee shall not perform any structural repairs, alterations, replacements, additions, or improvements without first submitting to the Lessor a plan of the work to be performed with accompanying documentation and secondly obtaining the prior written consent of the Lessor.

5

C. Ownership of Structural Modifications and Fixtures

Unless otherwise agreed in writing, all structural repairs, alterations, replacements, additions, improvements or renovations to the Facility, and any fixtures installed either by the Lessor or the Lessee, shall, upon the termination of this Lease, become the sole and exclusive property of the Lessor. The Lessee shall not permit any liens, mortgages, or other security interests for the payment of moneys or value given to be attached to the property for any structural repairs, alterations, replacements, renovations, additions, or improvements to the Facility. Lessee will, if required by the Lessor, provide such waiver or waivers of any lien or bond, in form and with surety satisfactory to the Lessor, prior to the commencement of any work, repairs, alterations, renovations, additions or improvements to the Facility. If any lien, mortgage, or other security interest is attached to the property, Lessee shall forthwith cause such lien, mortgage, or security interest to be released of record without cost to the Lessor.

Article XI    Utilities and Other Charges

The Lessee agrees to procure, provide, and maintain all applicable utilities for the Facility including but not limited to heat, hot water, gas, electricity, telephone service, and air conditioning if any. The Lessee further agrees to pay for any applicable water and sewer charges, the cost of any necessary permit(s) or license(s), and the costs of any other fee(s) required by law.

Article XII    Insurance

A. Coverage

The Lessee will keep in force, at its own expense, for the duration of this Lease, and during any other times the Lessee occupies the Facility or any part thereof, the following insurance coverage:

1. General liability insurance, including contractual liability covering the Facility in companies and in form acceptable to the Lessor having minimum limits of Five Million ($5,000,000.00) Dollars for bodily injuries to or death of one person and Five Million ($5,000,000.00) Dollars for bodily injuries to or death of more than one person resulting from any accident or disaster. Said liability policy or policies shall name the Lessor and its Trustees as additional insured for liability purposes.

6

2. Lessee shall insure and keep insured with agreed amount replacement/reproductive cost policies covering the real property of the demised premises of Lessor, and/or buildings and/or additions that shall be erected on the premises during the time of this Lease, in the aggregate amount equal to the fair appraised value of the property as determined by an independent appraisal firm acceptable to the Lessor once every three years, against the hazards of fire and theft with companies acceptable to Lessor. Moreover, the aforementioned policy shall include but not be limited to provisions of supplemental coverage for debris removal, water damage from back-up of sewers and drains, demolition, ordinance or law, increased cost of construction, boiler and machinery and loss caused by flood and earthquake. Said real property policy or policies shall name the Lessor as loss payee.

The Lessor, at its discretion, may obtain aggregate insurance covering the gross total value of the Lessor's real property and subsequently chargeback to the Lessee a percentage of the insurance cost based upon the Facility's appraised value as a percentage of the gross total unless the Lessee can demonstrate to the lessor that it is capable of acquiring the insurance as outlined in this section, Article XII, Section A, Subsection 2, at a lower cost.

3. If the nature of the Lessee's operation places any or all employees under the coverage of local Worker's Compensation or similar statutes, the Lessee, at its expense, shall keep in force for the duration of this Lease and for all other times the Lessee occupies the Facility or any part thereof, Worker's Compensation or similar insurance providing statutory coverage and meeting statutory limits.

B. <u>Assignment of Insurance Policies</u>

Lessee shall assign any policy of insurance, in whatever amount insured, procured pursuant hereto, to Lessor as security for the replacement of any building that may be destroyed by any hazard insured against herein. The insurance proceeds, when paid for damages covered by the policy, shall be applied to the replacement of the damaged building(s) on the demised premises only.

C. <u>Conditions of Coverage/Filing</u>

Insurance required under this Lease shall be in responsible companies qualified to do business and in good standing in Massachusetts and acceptable to the Lessor. Prior to execution of this Lease, the Lessee shall deposit with the Lessor all policies, certificates of insurance, and binders evidencing that the above required coverage is in full force and effect. At all times the Lessee shall keep on file with the Lessor a binder specifying the insurance companies and all limits on coverage. All insurance policies shall name the Lessor as the sole insured party, shall be payable directly to the Lessor, and shall contain the provision that no policy or policies may be materially altered or canceled without at least ten (10) days prior written notice to the Lessor.

Article XIII    Security

The Lessee shall be responsible for securing the Facility when not in use. The Lessee shall provide adequate security for the Facility at all times the Facility is in use by the Lessee, its agents, or anyone authorized by it to use the Facility. Such security shall include, but not be limited to, Lessee using its best efforts to protect any and all users thereof from injury, mishap, disability or death as well as to protect the Facility from damage resulting from vandalism, fire, misuse, abuse and other causes.

Article XIV    Sign(s), Poster(s), Bill(s)

Lessee shall not place or cause to be placed on or affixed to the interior or exterior of the Facility any sign(s), poster(s) or bill(s) without the prior written consent of the Lessor. If, upon inspection, the Lessor or its authorized agents discover any unapproved sign(s), poster(s) or bill(s) placed on or affixed to the Facility, such sign(s), poster(s), or bill(s) will be forthwith removed therefrom by the Lessor, and any cost for such removal or for any damage caused by the removal shall be borne by Lessee. The Lessor shall not be responsible for damage to any sign(s), poster(s) or bill(s) so removed. Any sign(s), poster(s), or bill(s) erected on, affixed to, or placed on the Facility with the Lessor's permission shall be at the Lessee's expense.

Article XV    Indemnification/Assumption of Liability/Lessee's Authority to Bind

A. Loss or Damage

The Lessee shall pay and be exclusively responsible for any and all debts for labor and materials for which it has contracted, for its rental of any appliance or equipment, and for any expense it has incurred on account of service to be performed under this Lease. Lessee agrees to use and occupy the Facility at Lessee's own risk, and the Lessor shall bear no responsibility for any loss or damage to fixtures or other personal property of Lessee. The provisions of this Article shall be applicable from the date of occupancy to the end of the term of this Lease and during such further period as Lessee may use or occupy the Facility or any portion thereof.

B. Indemnification

The Lessee shall defend with counsel first approved by Lessor, save harmless, and indemnify the Lessor from any liability for injury, loss, accident or actual or consequential damage to any person or property, and from any claims, actions, proceedings and expenses and costs in connection therewith (including, without limitation, reasonable counsel fees, court costs and any costs or expenses of litigation) (i) arising from (a) the omission, fault, willful act, negligence or other misconduct of the Lessee or (b) any use made or thing done or occurring on the premises or on, in or about the adjoining sidewalks, streets or ways or on, not caused by the omission, fault, willful act, negligence or other misconduct of Lessor, or (ii) resulting from the failure of Lessee to perform and discharge its covenants and obligations under this Lease.

      C.    <u>Authority to Bind</u>

          The Lessee, its employees, or agents are neither authorized to bind or involve the Lessor in any contract nor to incur any liability for, or on the part of the Lessor.

**Article XVI**    <u>Right of Entry by Lessor</u>

      The Lessor reserves the right to enter the Facility at any time to make repairs or improvements thereon, to view or inspect the Facility, to show the Facility, to assure compliance with the terms of this Lease and to monitor the programs and service provided by the Lessee herein. The Lessor may also enter the Facility if it appears to be abandoned by the Lessee, or as otherwise permitted by law. The Lessee shall not interfere with aforementioned purposes.

**Article XVII**   <u>Termination</u>

      A.    <u>Causes for Termination</u>

          In addition to the termination of this Lease at the expiration of its term, the Lessor may terminate this Lease for any of the following reasons: breach of any Lease provision by the Lessee; dissolution, bankruptcy or reorganization in bankruptcy of the Lessee; using or permitting the Facility to be used for unlawful or illegal purposes or activities; taking of the Facility by eminent domain; or fire or other casualty which has caused substantial damage to the Facility and which, in the opinion of the Lessor, makes the Facility unsuitable for its intended use. Nothing in this Lease shall be construed to prohibit the parties hereto from terminating this Lease at such time and on such terms and conditions as mutually agreed upon in writing.

      B.    <u>Notice of Termination</u>

          Except at the expiration of the term or where the law requires a shorter notice period, the Lessor shall terminate Lessee's tenancy only after giving Lessee, its agents or employees prior written notice of termination setting forth the date, not fewer than thirty (30) calendar days after the date of delivery or mailing, when such termination shall be effective.

      C.    <u>Holdover Status</u>

          Upon termination of this Lease for any reason, if the Lessee fails to vacate and deliver up the Facility and continues to holdover, occupy or use the Facility, then the terms and conditions of this Lease shall carry over and apply to the Lessee during such holdover period subject to the Lessor availing itself of all rights and remedies hereunder.

**Article XVIII**  <u>Renewal Terms</u>

      This Lease in its original form may be renewed at the end of its term subject to the written approval of both the Lessor and the Lessee.

Article XIX  Lessee's Obligations Upon Termination

    A. Quit and Deliver Up the Facilities

The Lessee shall quit and deliver up the Facility peaceably and quietly at the end of the term or at the expiration of any applicable notice period hereunder, in as good repair, order and condition as it was at the beginning of the term, or may have been put during the term, reasonable wear and tear and damage by fire or other casualty excepted. The Lessee shall also at this time remove all goods and effects from the Facility and shall deliver up to the Lessor all keys, locks, fixtures, and additions to the Facility.

    B. Lessee's Obligations for Breach

The Lessee covenants that in the event of termination of this Lease, because of default or breach by the Lessee, then at the option of the Lessor:

      1. The Lessee will be required to indemnify the Lessor from and against any loss and damage sustained by reason of any termination caused by default of, or the breach by the Lessee. The Lessor's damages hereunder shall include, but not be limited to, any loss of rents, attorney's costs or fees, costs of re-letting the Facility, and costs of moving and storage incurred by the Lessor in moving Lessee's belongings pursuant to law; and

      2. Lessee further agrees that if the Lessor shall remove Lessee's goods or effects, pursuant to the terms hereof or of any court order, the Lessor shall not be liable or responsible for any loss of or damage to the Lessee's goods or effects and the Lessor's act of removing such goods or effects shall be deemed to be the act of and for the account of Lessee, provided, however, that if the Lessor removes the Lessee's goods or effects, it shall comply with all applicable laws, and shall exercise due care in the handling of such goods to the fullest practical extent under the circumstances.

    C. Cumulative Remedies

All the rights and remedies of the Lessor under this Lease are cumulative and not exclusive. The Lessor shall also be entitled to all other remedies provided by law.

Article XX  Notice

Written notice from the Lessor to the Lessee shall have been properly given if mailed postage prepaid, registered or certified mail, return receipt requested, to the Lessee at the address of the Facility, with copy to the Corporation Counsel, Room 615, Boston City Hall, Boston, MA 02201, or if delivered or left in or on any part thereof, provided that if so mailed, the receipt has been signed, or if so delivered or left, that such notice has been delivered to or left with the Lessee or anyone expressly or implicitly authorized to receive messages for the Lessee.

Written notice from the Lessee to the Lessor shall have been properly given if mailed, postage prepaid, registered or certified mail, return receipt requested, to the Fund Manager of the George Robert White Fund, c/o the City of Boston Trust Office, Boston City Hall, Room 803, Boston, MA 02201, with copy to the Corporation Counsel, Room 615, Boston City Hall, Boston, MA 02201 provided that the receipt has been signed by the Lessor or anyone expressly or implicitly authorized to receive messages for the Lessor.

Article XXI    Modification/Waiver

    A.   Modification

Unless otherwise stated herein, the provisions of this Lease may be modified only with an instrument in writing, signed by the parties hereto, or their legal representatives, successors or assigns.

    B.   Waiver

The waiver of one breach of any term, condition, covenant, obligation, or agreement of this Lease shall not be considered to be a waiver of any other term, condition, covenant, obligation or agreement or of any subsequent breach thereof.

Article XXII    Compliance with Applicable Laws

The Lessee agrees to conform and to comply with all applicable federal, state and local laws, ordinances, regulations and licensing requirements in carrying out the terms of this Lease, including compliance with applicable provisions of Chapter 268A of the General Laws. The Lessee also agrees that no funds or charges shall be used for any partisan political activity or to further the election or defeat of any candidate for public office. The Lessee further agrees and shall require all contractors, subcontractors, licensees, or sublessees to agree not to discriminate in respect to any employee or against any participant or beneficiary of any program or service because of race, religion, sex, or national origin.

Article XXIII    Construction

This Lease shall at all times and in all respects be governed, construed, regulated, and administered according to the laws of the Commonwealth of Massachusetts.

11

Article XXIV  Severability

If any provision of this Lease or portion of such provision, or the application thereof to any person(s) or circumstance(s) is held invalid, the remainder of the Lease or of such provision and the application thereof to other person(s) or circumstance(s) shall remain in full force and effect.

Article XXV  Conformity

The Lessee shall at all times and in all respects adhere to the prohibitions outlined in Article 14 of the Will of George Robert White which expressly prohibits the use of White Fund facilities, or any part thereof, for political, religious or educational activities or programs.

Signed this _____ day of _____, 1997.

Lessor:
The City of Boston acting by and through
the Trustees of the George Robert White Fund
By:

_____
Robert V. Fleming, Fund Manager
For the Trustees of the
George Robert White Fund

Lessee:
East Boston Health Center Incorporated

By:

_____
JOHN P. CRADOCK, C.E.O.
Name & Title (print)
East Boston Health Center Incorporated

Approved as to Form:

_____
For Merita A. Hopkins
Corporation Counsel
City of Boston

12