UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 NOV 28  P 4: 16

U.S. DISTRICT COURT
DISTRICT OF MASS.

JUDITH THIBEAU
and GEORGE THIBEAU,
                    Plaintiffs,

Docket No. 04-10643MLW

LTS

v.

UNITED STATES OF AMERICA
and EAST BOSTON NEIGHBORHOOD
HEALTH CENTER CORPORATION
                    Defendants.

## **PLAINTIFF'S OPPOSITION TO DEFENDANT EAST BOSTON NEIGHBORHOOD HEALTH CENTER CORPORATION'S MOTION TO AMEND ANSWER**

Plaintiffs hereby state their opposition to defendant East Boston

Neighborhood Health Center Corporation's [hereinafter referred to as "the Health

Center"] motion to amend its answer by adding the affirmative defense of the

charitable immunity statute, which would limit the damages that might be

awarded against East Boston to $20,000.00, as opposed to the $2,000,000.00

liability insurance limits that plaintiffs understood was available to cover any

verdict or settlement for the Health Center.

As grounds for their opposition plaintiffs state that defendant East Boston

has waived this affirmative defense by failing to plead such defense when it filed

its original answer to plaintiff's Second Amended Complaint on September 1,

2004. Furthermore the Health Center should not be allowed to amend its answer

because to do so would: 1) cause plaintiffs undue prejudice; 2) raise significant new issues in the case; and 3) constitute unfair surprise to plaintiffs. Furthermore the motion should be denied because trial is imminent (scheduled for January 30, 2006) and there is no excuse for the Health Center's delay in raising this affirmative defense, especially since the Health Center has known of all facts necessary to assert this defense since this case began and there are no newly discovered facts that would excuse such delay in moving to amend.

This case arises out of an accident suffered by plaintiff Judith Thibeau when she fell on the premises of the Health Center on September 26, 2002, severely fracturing her left ankle, causing her to undergo multiple surgeries and incur medical expenses of over $200,000.00 and leaving her with serious scarring and partial disability and impairment. As such, the damage value of the case is significant, and well over charitable cap limit of $20,000.00.

After the Health Center filed its answer to plaintiffs' second amended complaint on September 1, 2004 the parties engaged in significant discovery and various scheduling and status conferences in court. At no time since filing its answer 14 months ago has the Health Center ever indicated that it would assert the charitable immunity defense. Thus, plaintiffs have expended considerable time and resources in engaging in discovery, retaining expert witnesses and preparing the case for trial.

If the Health Center had asserted the charitable immunity cap in a timely

fashion and thereby notified plaintiffs that there would not be $2,000,000.00

insurance limits available to cover a potential verdict, plaintiffs would have

altered their litigation strategy in various ways, including engaging in less

extensive discovery and moving to amend their complaint to add other

defendants, including individual agents and directors of the Health Center (so as

to avoid the charitable immunity cap). Thus, plaintiffs will be caused to suffer

significant prejudice if defendant's motion to amend is allowed. In contrast, the

Health Center will suffer no prejudice if the motion is denied, because it has

insurance coverage of at least $2,000,000.00 available to cover a potential verdict

for damages.


## PROCEDURAL HISTORY[1]

---

[1]    The Health Center's motion to amend mischaracterizes plaintiffs' claims, complaint and the procedural history of the case in various ways, thereby attempting to deceptively minimize the prejudice that plaintiffs will suffer by the late addition of the charitable immunity cap defense.

First, plaintiffs' original complaint filed in state court does not "predominantly set[s] forth professional negligence claims as to EBNHC's care providers who provided eye care to Ms. Thibeau."

Second, contrary to defendant Health Center's motion, plaintiffs filed a second amended complaint in federal court on August 18, 2004; not "in or about October, 2004" as stated in defendant's motion. Defendant Health Center filed its answer to the second amended complaint on September 1, 2004.

Third, the consolidated federal court action against both defendants did not "predominantly center[ed] on the professional negligence (i.e. failure to warn and provide informed consent)." In fact, the federal court action very specifically sets forth different bases for plaintiffs' claims against the Health Center and against the United States. Certain of those allegations are identical (see paragraphs 32 and 40, 33 and 41, 34 and 42). Certain other allegations are made specifically against the Health Center, and those allegations set forth standard premises liability charges against the Health Center, which are quite distinct from the 'professional negligence' claims against the United States.

Before suit was filed plaintiffs made a claim for damages against the

Health Center by means of a thorough settlement demand letter dated July 3,

2003. Exhibit "A", Affidavit of James L. Frederick, Esq. That letter specifically

stated that plaintiffs' claims were in large part based on premises liability

arguments and not allegations of professional negligence. [Plaintiffs had

originally put the clinic on notice of Ms. Thibeau's injury by letter dated

December 5, 2002.] Even though most of plaintiffs' claims were based on

premises liability arguments, the Health Center's insurer insisted that all claims

were based on allegations of professional negligence, thereby insisting that

plaintiffs make a claim against the Federal Government. Id.

Plaintiffs ultimately filed two complaints: one in Massachusetts state court

(Suffolk Superior) against the Health Center and a second complaint in Federal

---

Fourth, discovery was never "primarily directed to the professional negligence claim" as alleged in defendant Health Center's motion. All three parties exchanged written discovery (interrogatories and document requests) and six discovery depositions were taken. Frederick Affidavit. Plaintiffs took the deposition of the Health Center by separate depositions of two persons who were identified by the Health Center as persons most knowledgeable (Dr. James Taylor and Dennis Buccieri). Id. Plaintiffs took only one deposition of a representative of the Eye Clinic [which is being defendant by the United States Attorney's office]. Id. Defendants took the depositions of plaintiffs Judith and George Thibeau. Id. Finally, plaintiffs took the discovery deposition of Richard Price (the optometric student who examined plaintiff Judith Thibeau on the day of her accident), immediately before his video tape deposition (as taken by the assistant United States Attorney). Id. Therefore discovery was not primarily directed to the professional negligence claim as opposed to the premises liability claims against the Health Center.

Fifth, plaintiffs alerted defendant Health Center of the basis for its premises liability claims against the Health Center on July 3, 2003, well before suit was filed, by means of a thorough settlement demand letter to the Health Center's insurer; and in plaintiff Judith Thibeau's answers to interrogatories propounded by the Health Center (which were sent to the Health Center's counsel on or about February 26, 2005. [See answers 3, 5 and 7]. Id. Therefore, defendant Health Center's motion incorrectly states that plaintiffs' expert reports set forth the basis of the alleged defects for the first time.

4

Court against the United States. Id. These complaints were filed on or about
April 2, 2004. Id. Defendant East Boston removed the state court case to Federal
Court on May 12, 2004. Id. Thus, counsel for the defendant has been aware of
all of the plaintiff's claims and the potential charitable immunity cap defense
since at least early May, 2004, over 18 months ago. Furthermore, a review of
defendant's motion to amend and attached documents indicates that defendant has
had all information necessary to assert the charitable immunity cap defense since
the beginning the case in April, 2004 (and since the initial claim was made in
December 2002); and that there has been no subsequent discovery of new
evidence that would justify any delay in asserting the charitable immunity cap
affirmative defense.

        The parties agreed to combine the two cases. Id. Plaintiffs filed an
assented to motion to file a second amended complaint on July 19, 2004, which
was allowed on August 5, 2004. Id. Plaintiffs thereafter filed a second amended
complaint on August 18, 2004, naming both defendants under the same case
number. Id. The Health Center filed its answer to the second amended complaint
on September 1, 2004. Id. By this date the Health Center's attorneys had known
the details of plaintiffs' complaint for almost five (5) months. The Health Center
had known of the claim since December 2002. Id. The Health Center's answer to
plaintiffs' second amended complaint contained eight (8) affirmative defenses,
but did not include the affirmative defense of the charitable immunity cap.

                                        5

After the Health Center filed its answer the parties conferred and entered

into a joint pretrial schedule, which set forth time deadlines for filing and

responding to written discovery and taking depositions. The schedule was

presented to and adopted by the court at the first scheduling conference, held on

December 2, 2004. Id. The parties thereafter propounded interrogatories and

document requests to each other, responded to such written discovery and noticed

and took six depositions. Id. [One of these depositions took place in Greenwich,

New York, which required all counsel to drive approximately three hours each

way. Id.] The Notice of the first scheduling conference (issued by the court on

October 28, 2004) specified that the conference was being held pursuant to Fed.

R. Civ. P. 16(b) and Local Rule 16.1[2]; and set forth the exact contents of Local

---

[2]    Rule 16 of the Federal Rules of Civil Procedure describes the procedure for pretrial
conferences, scheduling and management of cases. The objective of pretrial conferences,
according to the rule, is "…for such purposes as (1) expediting the disposition of the action; … (3)
discouraging wasteful pretrial activities; … (5) facilitating the settlement of the case." The rule
further states that at any pretrial conference the court "may take appropriate action, with respect to
(1) the formulation and simplification of the issues … (2) the necessity or desirability of
amendments to the pleadings; … (9) settlement … (16) such other matters as may facilitate the
just, speedy, and inexpensive disposition of the action." Furthermore, the rule gives the court
authority to order sanctions against a party or a party's attorney if the party or attorney "… fails to
participate [in the pretrial conferences] in good faith …." Accordingly the trial judge may, on
motion or on the judge's own initiative, "… make such orders with regard thereto as are just, and
among others any of the orders provided in rule 37(b)(2)(B), (C), (D)." The rule also allows the
court to order the offending party or attorney "… to pay the reasonable expenses incurred because
of any noncompliance with this rule, including attorney's fees …."

Local Rule 16.1 [Early Assessment of Cases] authorizes the court to convene scheduling
conferences. In part, the rule obligates the parties to confer and file a joint statement containing a
proposed pretrial schedule, which takes into consideration "… the desirability of conducting
phased discovery in which the first phase is limited to developing information needed for a
realistic assessment of the case and, if the case does not terminate, the second phase is directed at
information needed to prepare for trial …." The joint statement is required to have a certification
signed by counsel who affirms that counsel have conferred "… with a view to establishing a
budget for the costs of conducting the full course – and various alternative courses – of the
litigation ….." Rule 16.1 (E) requires the judge to review the case to judge its complexity, the
need for close monitoring and to consider such factors as "… (2) the amount of time reasonably
needed by the litigants and their attorneys to prepare the case for trial; (3) the judicial and other
resources required and available for the preparation and disposition of the case …." Rule 16.1
specifically states that the contemplated scheduling conferences shall be conducted according to

6

Rule 16.1 in a footnote to the Notice. Id. That local rule states in part that the
parties are obligated at the time of the conference to prepare a joint discovery
plan, in part to develop "information needed for a realistic assessment of the
case…." Clearly, notice of whether defendant considered damages to be limited
by the charitable immunities statute would have been necessary for the plaintiffs
to make a realistic assessment of the case. Therefore, failure to again give timely
notice of the charitable immunity cap affirmative defense at the first scheduling
conference on December 2, 2004 constitutes a failure to follow the pretrial
scheduling conference order and a violation of Local Rule 16.1.

The most recent scheduling conference held on August 10, 2005 set
deadlines for the disclosure of expert witnesses, filing motions for summary
judgment, final pretrial conference and trial. Id. Plaintiffs disclosed their expert
witnesses on September 30, 2005, and defendant East Boston disclosed its expert
witnesses on October 30. Id. The deadline for any party to file a motion for
summary judgment was on November 15, 2005. On November 11, 2005 counsel
for East Boston telephoned plaintiffs' attorney to advise that he had just decided
to move to amend defendant's answer to add the affirmative defense of the
charitable immunity statute. Id. At no time prior to November 11, 2005 had
defendant Health Center indicated or suggested that it would assert the affirmative
defense of the Charitable Immunity damage cap.

---

the provisions for a pretrial conference under Federal Rule of civil Procedure 16 and for a case
management conference under LR 16.3."

ARGUMENT

1.    Defendant Health Center Has Waived the Affirmative Defense of the
      Charitable Immunity Cap

A statutory limitation on liability, such as the Charitable Immunity Cap

has been held by the First Circuit Court of Appeals to constitute an affirmative

defense under Rule 8 (c) of the Federal Rules of Civil Procedure, which must be

pled affirmatively.    Jakobsen v Massachusetts Port Authority 520 F.2d 810, 813

(1st Cir. 1975).  In its motion the Health Center admits this proposition.

Failing to plead an affirmative defense results in its waiver. "The ordinary

consequence of failing to plead an affirmative defense is its forced waiver and its

exclusion from the case. See Wright & Miller, supra, s 1278, at 339 & n. 29, and

cases cited therein." Jakobsen, Supra at 813

"Fed.R.Civ.P. 8(c) requires a party to affirmatively plead certain specified

defenses, as well as "any other matter constituting an avoidance or affirmative

defense."    Affirmative defenses not so pleaded are waived.    See FDIC v.

Ramirez-Rivera, 869 F.2d 624, 626 (1st Cir.1989).   We have previously held that

a statutory provision limiting damages to a fixed sum constituted an affirmative

defense for purposes of Rule 8(c). Jakobsen v. Massachusetts Port Authority, 520

F.2d 810, 813 (1st Cir.1975).  Section 2-719 performs the same damage limitation

function, and there is no reason to reach a contrary result here.    *See also* *Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir.1987)." Knapp Shoes, Inc. v Sylvania Shoe Manufacturing Corp. 15 F.3d 1222, 1226 (1st Cir. 1994). See also, Simon v United States, 891 F.2d 1154 (5th Cir. 1990).

The Health Center failed to plead the affirmative defense of the charitable immunity cap when it filed its answer to plaintiffs' second amended complaint on September 1, 2004. The Health Center has made no mention of the charitable immunity cap until November 11, 2005, more than three years after plaintiff Judith Thibeau's accident, almost two and one half years after settlement demand to defendant's insurer, over 18 months after service of plaintiff's initial state court complaint, 13 ½ months after filing its answer to plaintiffs' second amended complaint and two and one half months before trial, after the close of all discovery. Thus, the Health Center has waived the affirmative defense of the charitable immunity cap.

Furthermore, this possible defense has been known to the Health Center since it received notice of plaintiff's claims in December 2002.

"The reason why affirmative defenses under Rule 8(c) must be pled in the answer is to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense.    *Blonder-Tongue* *Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91

9

S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971)." Id.  See also Wolf v Reliance
Standard Life Insurance Company, 71 F.3d 444, 449-450 (1st Cir. 1995).

2.    Defendant's Motion to Amend Should Be Denied Because of Prejudice to
      Plaintiffs, Unfair Surprise to Plaintiffs, Unexcused Delay and Imminence
      of Trial

A motion to amend may be denied for such reasons as: "undue delay, bad
faith or dilatory motive on the part of the movant, repeated failure to cure
deficiencies by amendments previously allowed, undue prejudice to the opposing
party by virtue of allowance of the amendment, futility of the amendment, etc."
[emphasis added] *Castellucci, supra* at 290, 361 N.E.2d 1264, quoting *Foman v.
Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)."  Mathis v
Mass. Electric Co., 409 Mass. 256, 264, 565 N.E. 2d 1180 (1991).  "… an
unexcused delay in seeking to amend is a valid basis for denial of a motion to
amend. [citation omitted]" Id. at 264-265.

A.    Prejudice to Plaintiffs

Defendants' proposed amendment would cause undue prejudice to the
plaintiffs.  Plaintiffs have expended great time and resources over at least the last
one and one half years in an effort to establish liability against the East Boston
Neighborhood Center.  Ms. Thibeau's injuries are very significant, and have the
potential of resulting in a jury verdict of well over $1,000,000.00.  She has
incurred medical expenses of at least $217,000.00, experienced substantial pain

10

and suffering and has been left with a substantial physical defect and scar to her

left ankle, a permanent limp. In light of such injuries and potential jury verdict,

plaintiffs' counsel devoted significant time and resources to propounding

discovery, taking depositions and retaining expert witnesses. Counsel's decision

to devote such time and resources to this case was in large part based on counsel's

knowledge that the Health Center was fully insured, with liability limits of

$2,000,000.00; and that there was no asserted limit to damages against the Health

Center. Frederick Affidavit. Thus, counsel believed that there was the potential

for a significant damage award, that there was insurance available to pay for such

damage award and there was no limit to such damage award. Id.


Plaintiffs have always maintained that there were various bases of

liability, including failure to maintain the premises in a safe condition and in

failing to properly conduct the dilation of plaintiff's eyes and properly warn her of

the consequences of such dilation. Thus, plaintiffs continued to pursue their claim

against the Health Center, on a theory of traditional premises liability and against

the United States on theories of professional liability.


By May, 2003 plaintiffs' counsel was aware that insurance coverage of the

Clinic, available from the Health Center's insurer had a limit of $2,000,000.00.

Plaintiffs' demand against the insurer was in the amount of $2,000,000.00, in part

because that was the extent of liability insurance coverage, and because Ms.

Thibeau's injury compelled a significant value. The insurer never asserted that damages against the Health Center were limited by the Charitable Immunity Cap.

During discovery plaintiffs' counsel discovered that the Health Center rented the building from the City of Boston, through the Robert White Fund. Given the amount of liability insurance coverage available to the defendant clinic ($2,000,000.00), and given the fact that claims against the City of Boston are capped at $100,000.00 (irrespective of any other potential damage limit as to the Robert White Fund), defense counsel made a strategic decision to pursue the claim against the Health Center rather than the City or the Fund. This decision was based on the fact that counsel believed that $2,000,000.00 was the available liability limit against the Health Center since the Health Center never notified plaintiffs that liability damages against the clinic would in any way be limited by the charitable immunity statute.

Furthermore, because defendant Health Center never notified plaintiffs of its intent to assert the charitable immunity cap, plaintiffs had no reason to try to discover whether the cap actually applies to the Health Center or to craft their complaint in any way so as to avoid the cap, such as by seeking to add individual employees, officers or board members of the Health Center.[3]

---

[3] "Section 85K, which limits the liability of charitable corporations ... does not purport to limit the individual liability of a charitable corporation's officers or board members." Morrison v Lennett, 415 Mass. 857, 863, 616 N.E.2d 92 (1993). "The general rule ... is that an agent is not entitled to the protection of his principal's immunity

12

At this juncture of the case [more than three years after Ms. Thibeau's accident on September26, 2002] the only way to add parties [since the statute of limitations has run] would be by way of amendment. Even if additional defendants were allowed to be added, this would cause delay of trial of the case by as much as one year. Furthermore, adding parties would also cause undue additional time and expense to the plaintiffs. New defense counsel would propound new discovery and probably want to re-depose Mr. and Mrs. Thibeau. Plaintiffs' counsel would be forced to propound additional discovery and take further depositions, thereby causing delay in resolving plaintiffs' case.

B.    Unfair Surprise

The assertion of the charitable status and the claim of the charitable immunity cap is clearly a surprise to the plaintiffs; since the claim of such affirmative defense was never made until the eve of trial. The Health Center is now attempting to add a whole new theory defense on the eve of trial. In a similar situation the First Circuit Court of Appeals upheld denial of a motion to amend a complaint where the amended complaint would have introduced "…a whole new theory of liability and relief which, coming on the eve of trial, would have unfairly surprised the defendant [in such a case] who had already devoted much time and expense to the case as earlier framed. …. Plaintiff was not entitled to "start a new game with new rules," [citations omitted]" Caribbean Insurance

---

even if the agent is acting on behalf of his principal." Mullins v Pine Manor College, 389 Mass. 47, 63, 449 N.E.2d 331 (1983).

13

Services, Inc. v American Bankers Life Assurance Company of Florida, et al, 754
F2d. 2, 7-8 (1st Cir. 1985).

## C.    No Excuse for Delay

The Health Center's motion to amend is not based on any newly
discovered information. The evidence that the Health Center uses to support its
claim of charitable status was available since the beginning of the case and before
the claim was first asserted in December, 2002. All of the information divulged
in defendant's motion to amend, and all of the attachments to that motion were
available to the Health Center's representatives, insurers and attorneys from the
day of plaintiff's accident, more than three years ago. Thus, there is no excuse for
waiting to assert the claim of charitable immunity until this late date.

In a case in which plaintiff sought to bring a late amendment to its
complaint, and where evidence of the new theory of liability had long been
available to the plaintiff, and where the case was ready for trial, and where there
was no "valid explanation for the lateness of his [plaintiff's] conduct... [in
seeking] to amend his complaint in a significant way" there "no abuse of
discretion" in the trial court's denying the motion to amend. Castelluci v United
States Fidelity and Guaranty Co., supra at 289. "When trial is … imminent …
[the] judge may give weight to the public interest in the efficient operation of the
trial list and to the interests of other parties who are ready for trial [by denying the

motion to amend]." Id.

"Unexcused delay in seeking to amend is a valid basis for the denial of a

motion to amend under Mass.R.Civ.P. 15(a). Castellucci v. United States Fidelity

& Guar. Co., 372 Mass. 288, 290-292, 361 N.E.2d 1264 (1977).    Libby v

Commissioner of Correction, 385 Mass. 421, 428, 432 N.E.2d 486 (1982)

It is well within a court's discretion to find prejudice where the

amendment "substantially changes the theory on which the case has been

proceeding and is proposed late enough so that the opponent would be required to

engage in significant new preparation." See 6 Wright & Miller, supra 1487, at

623." Wolf v Reliance Standard Life Insurance Company, supra at 450.[4]

D.    Imminence of Trial

On August 10 this court scheduled trial for January 30, 2006.  It is

believed there are no other cases scheduled for trial before the magistrate on that

---

[4]    Whether defendant Health Center is a charitable organization of the type covered by M.G. L. Ch. 231 Sec. 85K is a relatively complex fact question.  Plaintiffs never conducted any discovery to determine the truth of the charitable immunity claim because the issue was never raised by the Health Center.  Furthermore, plaintiffs also never inquired or made allegations against any individual employees, directors or officers of the Health Center as to their own personal liability because there never was a need to do so (since the charitable immunity cap was never raised as a defense).  Plaintiffs perhaps could raise such allegations of personal responsibility, and thereby potentially avoid the charitable immunity cap; but to do so at the 11th hour, two months before trial would be futile and would work great prejudice to the plaintiffs' claims against such individuals, in that plaintiffs would be forced to hurry up to determine the grounds for and then asserting such claims.  Plaintiffs would also have to pursue discovery against such individuals.  Furthermore, if other individual defendants were now added to the case, that would have the effect of postponing trial of the case for probably another year, thereby further prejudicing plaintiffs and their legitimate interest in resolving their claims in a timely manner.

15

date. The Health Center notified plaintiffs's counsel of its need to move to amend
its answer on November 11, 2005; after discovery had been completed, expert
disclosures made and on the eve of trial.

3.    Charitable Immunity Cap May Be Struck As a Sanction of the Court

It has been held by the Massachusetts Appeals Court that a trial court has
the authority to strike the affirmative defense of charitable immunity cap under
G.L. c.231 Sec. 85K as a sanction for noncompliance with a discovery order
under Mass.R.Civ.P. 37(b)(2)(C). Keene v Brigham and Women's Hospital, Inc.,
56 Mass. App.Ct. 10, 24, 775 N.E.2d 725. This court has similar authority to
strike the Health Center's proposed charitable immunity defense.

In the instant case the Health Center's attorneys violated Rule 16 of the
Federal Rules of Civil Procedure by failing to disclose their intent to assert the
charitable immunity cap affirmative defense at pretrial conferences. By failing to
disclose their intent to assert this defense, the Health Center and its attorneys
failed to participate in the conferences in good faith. Rule 16 authorizes the court
to order such sanctions such as those that are available under Rule 37(b)(2).
According to Rule 16 the trial judge may on motion or on his own initiative , "...
make such orders with regard thereto as are just, and among others any of the
orders provided in rule 37(b)(2)(B), (C), (D)." The rule also allows the court to

16

order the offending party or attorney "… to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees …."

Local Rule 16.1 obligates the parties to confer to prepare a pretrial schedule which considers the need to develop information "needed for a realistic assessment of the case." One of the purposes of Local Rule 16.1 is for "establishing a budget for the costs of conducting the full course – and various alternative courses – of the litigation ….." By failing to disclose their intent to assert the charitable immunity cap affirmative defense, the Health Center's attorneys failed to comply with the intent of Rule 16.1. Local Rule 16.1 (E) requires the judge to review the case to judge its complexity, the need for close monitoring and to consider such factors as "… (2) the amount of time reasonably needed by the litigants and their attorneys to prepare the case for trial; (3) the judicial and other resources required and available for the preparation and disposition off the case …." The failure of the Health Center's attorneys to disclose their intent to assert the charitable immunity cap defense further caused the court to be unable to properly review the case and determine the amount of time needed to prepare the case for trial and determine the judicial and other resources required for preparation and disposition of the case.

Finally, Local Rule 1.3 states that "Failure to comply with any of the directions or obligations set forth in, or authorized by, these Local Rules may result in dismissal, default, or the imposition of other sanctions as deemed

appropriate by the judicial officer." The Health Center's failure to comply with its obligation to timely assert the charitable immunity affirmative defense amounts to a failure to comply with obligations under the Local Rules; and thereby further authorizes this court to impose such sanctions as to strike an affirmative defense, or deny the Health Center's motion to add such affirmative defense.

## CONCLUSION

For all of the above reasons plaintiffs ask this court to deny the Health Center's Motion to Amend to Add Affirmative Defense or to sanction the Health Center by striking the suggested affirmative defense and awarding the plaintiffs reasonable attorney's fees and costs allowed by Rule 16 of the Federal Rules of Civil Procedure.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), plaintiffs request oral argument on the Health Center's Motion to Amend.

Plaintiffs,
Judith and George Thibeau,
by their attorney,

James L. Frederick, Esq.
BBO #543597
Koufman & Frederick, LLP
1330 Beacon Street,
Suite 311
Brookline, MA 02446-3202
(617) 738-7880

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

JUDITH THIBEAU                                    Docket No. 04-10643MLW
and GEORGE THIBEAU,
                    Plaintiffs,

v.

UNITED STATES OF AMERICA
and EAST BOSTON NEIGHBORHOOD
HEALTH CENTER CORPORATION
                    Defendants.

## **AFFIDAVIT OF JAMES L. FREDERICK, ESQ.**

I, James L. Frederick hereby depose and state as follows:

1.      I am an attorney licensed to practice in the Commonwealth of

Massachusetts and in the United States District Court for the Eastern District of

Massachusetts.

2.      I represent the plaintiffs in the above case, and have represented them

since some time in 2002, shortly after Judith Thibeau's accident on September 26,

2002.

3.      I am familiar with all pleadings in this case and the status of the case.

4.      Before suit was filed plaintiffs made a claim for damages against East

Boston Neighborhood Health Center Corporation [hereinafter referred to as "the

Health Center] by means of a thorough settlement demand letter dated July 3,

2003. That letter specifically stated that plaintiffs' claims were in large part based

on premises liability arguments and not allegations of professional negligence. I

have attached a copy of that letter to this affidavit.

5.      At the time that I made the initial settlement demand on July 3, 2003 I had

been advised by the Health Center's insurer that the liability insurance policy

limits applicable to the Health Center were $2,000,000.00. I had gained that

knowledge by May 2003. My subsequent review of such insurance policy

confirmed this information. The insurer never asserted that damages against the

Health Center were limited by the charitable immunity cap.

6.      Plaintiffs had originally put the Health Center on notice of Ms. Thibeau's

injury by letter dated December 5, 2002.]

7.      Even though most of plaintiffs' claims were based on premises liability

arguments, the Health Center's insurer insisted that all claims were based on

allegations of professional negligence, thereby insisting that plaintiffs make a

claim against the Federal Government.

8.      Plaintiffs filed two complaints: one in Massachusetts state court (Suffolk

Superior) against the Health Center and a second complaint in Federal Court

against the United States. These complaints were filed on or about April 2, 2004.


9.      The Health Center removed the state court case to Federal Court on May

12, 2004.


10.     In the interest of expediency and convenience the parties agreed to

combine the two cases. Plaintiffs filed an assented to motion to file a second

amended complaint (which named both defendants) on July 19, 2004, which was

allowed by the court on August 5, 2004. Plaintiffs thereafter filed a second

amended complaint on August 18, 2004, naming both defendants under the same

case number. The Health Center filed its answer to the second amended

complaint on September 1, 2004


11.     After the Health Center filed its answer on September 1, 2004 After the

Health Center filed its answer the parties conferred and entered into a joint

pretrial schedule, which set forth time deadlines for filing and responding to

written discovery and taking depositions. The schedule was presented to and

adopted by the court at the first scheduling conference, held on December 2,

2004. The parties thereafter propounded interrogatories and document requests to

each other, responded to such written discovery and noticed and took six

depositions. One of these depositions took place in Greenwich, New York, which

- 3 -

required all counsel to drive approximately three hours each way. The parties engaged in at least two status / scheduling conferences in court.

12.     Plaintiffs took the deposition of the Health Center by separate depositions of two persons who were identified by the Health Center as persons most knowledgeable (Dr. James Taylor and Dennis Buccieri). Plaintiffs took only one deposition of a representative of the Eye Clinic [which is being defendant by the United States Attorney's office]. Defendants took the depositions of plaintiffs Judith and George Thibeau. Finally, plaintiffs took the discovery deposition of Richard Price (the optometric student who examined plaintiff Judith Thibeau on the day of her accident), immediately before his video tape deposition (as taken by the assistant United States Attorney.

13.     Discovery from the Health Center revealed that the Health Center rented the premises from the City of Boston, through the Robert White Fund.

14.     Plaintiff Judith Thibeau's answers to interrogatories propounded by the Health Center which were sent to the Health Center's counsel on or about February 26, 2005 clearly set forth the grounds for liability against the Health Center which were distinct from the grounds for liability against the United States. A copy of those answers is attached hereto.

- 4 -

15.    The Notice of the first scheduling conference (issued by the court on October 28, 2004) specified that the conference was being held pursuant to Fed. R. Civ. P. 16(b) and Local Rule 16.1. The notice set forth the exact contents of Local Rule 16.1 in a footnote to the Notice.

16.    The most recent scheduling conference held on August 10, 2005 set deadlines for the disclosure of expert witnesses, filing motions for summary judgment, final pretrial conference and trial. Plaintiffs disclosed their expert witnesses on September 30, 2005, and defendant East Boston disclosed its expert witnesses on October 30. The deadline for any party to file a motion for summary judgment was on November 15, 2005.

17.    On November 11, 2005 counsel for the Health Center telephoned me to advise that he had just decided to move to amend the Health Center's answer to add the affirmative defense of the charitable immunity statute. At no time prior to November 11, 2005 had the Health Center or its attorneys indicated or suggested that it would assert the affirmative defense of the charitable immunity damage cap.

18.    My decision to devote the time and resources that I have to this case was based on my knowledge that the Health Center's liability insurance limits were $200,000.00 and there was no assertion of a charitable immunity cap. This knowledge also affected my tactical decision to focus the litigation on plaintiffs'

claims against the Health Center and the United States and not seek to add

additional defendants, such as the City of Boston, the Robert White Fund or

individual employees, agents or directors of the Health Center.

Signed under the penalties of perjury, this the 28 day of November, 2005.


James L. Frederick, Esq.