**EXHIBIT "A"**

# KOUFMAN & FREDERICK, LLP

Attorneys at Law
1330 Beacon Street, Suite 311
Brookline, Massachusetts 02446

617.738-7880
Fax: 617.738-9497
e-mail: jfrederick@kflawyers.com

Victor J. Koufman
James L Frederick
Mary Eiro-Bartevyan
Elizabeth M. Rennard
Melissa J. Garrand

Of Counsel
David J. Hallinan
Patrick J. DeJulis

265 Essex Street, Suite 301
Salem, Massachusetts 01970
978.745-2212
Fax: 978.745-9157

October 27, 2005

Via Certified Mail, Return Receipt Requested

Dan Burns
Chubb Specialty Claims
92 Hopmeadow Street
Simsbury, CT 06070

re:  Our Client:   Judith Thibeau
     Your Insured: East Boston Neighborhood Health Center
     Claim No.:    59763
     D/O/A:        9/26/02
     Our File:     #02/43

Dear Dan:

This letter is a demand for relief pursuant to Massachusetts General Laws (M.G.L.), Ch.176D and 93A, S.9.

There are multiple reasons for my demand under these statutes. First is Chubb's failure to make payment of $5,000 available under the Medical Expense Coverage of its policy. Second, is Chubb's unreasonable delay in disclaiming coverage, failure to forward the claim onto Federal authorities and failure to offer a reasonable explanation by disclaiming coverage. Third, is Chubb's failure to effectuate settlement of the Thibeaus' claim, where liability under its policy is reasonably clear.

**1.   Failure to pay medical expense coverage (Medpay)**

The Thibeaus' claim should come within the Chubb policy and its available medical expense coverage. In your August 12, 2003 letter you stated that since the Thibeaus' allegations "include claims based on an actual or alleged Professional Services Wrongful Act" there would be "no coverage ... under the General Liability Insuring Agreement." As I note below, most of the Thibeaus' claims do not arise out of medical care in the sense of a professional services wrongful act; and these claims are not based on professional services wrongful acts. Thus, there should be coverage for these claims under the Chubb policy; and, therefore, coverage under the Medical Expense Endorsement.

Generally a commercial insurance policy's Medical Expense Endorsement should provide medical expense coverage for injuries caused by accidents on an insured's premises without regard to fault or theory of liability. In situations like Ms. Thibeau's the policy should be read to provide for the broadest coverage possible – which would mean provision of medical coverage to Ms. Thibeau.

It is my opinion that your denial of the no fault Medpay coverage to Ms. Thibeau

Dan Burns
Chubb Specialty Claims
October 27, 2005
Page 2

constitutes violations of the following sections of M.G.L. Ch. 176D §3(9):

> "(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;"

> "(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed. ["Proof of loss" here means not a final settlement demand; but rather the original statement of a loss that might be covered under Chubb's policy set forth in my original letter of 12/5/02.]"

> "(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

2. <u>Unreasonable delay in disclaiming coverage, failure to forward claim to Federal authorities and failure to offer reasonable explanation for denial of claim by disclaiming coverage.</u>

On December 5, 2002 I originally notified the East Boston Neighborhood Health Center that Judith Thibeau had suffered serious injuries after falling down stairs inside the building at 79 Paris Street after having her eyes dilated. The claim could reasonably be assumed to be one of premises liability. The notice was forwarded to Chubb; and on January 13, 2002 Chubb notified this office that it was the insurance carrier for the East Boston Neighborhood Health Center; that it was not acknowledging any liability; and that it was in the process of investigating the claim.

Between January 13 and August 12, 2003 there was no indication from Chubb that it would deny coverage on the belief that the claim arose out of medical care or that it was based on a professional services wrongful act. Nor was there any indication that the Thibeaus' case should be covered by the federal government alone. In fact, at one point you offered to settle the claim for the $5,000.00 available under Chubb's Medical Expense Coverage. By your actions in making an offer to settle (however nominal) and failing to deny coverage, Chubb accepted coverage of Ms. Thibeau's claim and waived any contention that her claim was not covered by the Chubb policy.

Furthermore, although you had said in telephone conversations with me that this was a claim that "might" be covered by the United States Government and "might" be "turned over" to the United States Attorney's office, you and Chubb never turned over the case to the Federal Government. Chubb's continued failure to deny coverage and/or turn the case over to the Federal Government was deliberately misleading, creating the impression that Chubb had accepted coverage of most of the Thibeaus' claims, while at the same time delaying the overall claim process.

On July 3, 2003 I submitted a settlement demand to Chubb on Ms. Thibeau's claim. In that letter I set forth a number of reasons why the Health Center would be liable for Ms. Thibeau's accident. In effect these were separate claims of liability based on separate theories of liability. Most of the claims against the Health Center were in the nature of general premises liability claims and were not for professional services wrongful acts. (Those arguments are again set forth in detail on pages 4-5 of this letter.) As such, the premises liability claims should have been afforded coverage under Chubb's policy.

Dan Burns
Chubb Specialty Claims
October 27, 2005
Page 3

In your response letter of August 12, 2003, you stated for the first time that the Thibeaus' claim was excluded from the Chubb policy because you believed that "this claim" was afforded coverage under the Federally Supported Health Centers Assistance Act of 1992 as amended and/or the Federally Supported Health Centers Assistance Act of 1995 as amended. Your denial of coverage came seven (7) months after notice of the loss. Furthermore, your denial failed to cite the particular language of the Chubb policy which authorized Chubb to deny coverage.

You also took no action to forward the claim to and seek indemnification from the Federal Government as you had previously advised me you might do. In effect you delayed resolution of the claim by leading me to believe that the Thibeaus would not have to file a separate claim with the Federal Government in addition to the claim which I had first given notice of in my December 5, letter. If Chubb believed in good faith that Ms. Thibeau's claim was excluded from coverage under the its policy, Chubb should have immediately denied coverage and turned the claim over to the Federal Government instead of delaying for seven months and then denying coverage.

You also knew or should have known that by law that the Federal Government has up to six months to respond to such claims and that claimants are barred from filing suit under the Federal Tort Claims Act until the claim has been denied or six months has run. Thus, your actions on behalf of Chubb caused a 13 month delay in resolving Ms. Thibeau's claim

Subsequently I wrote a comprehensive letter to you on December 12, 2003 which asked that Chubb reconsider its denial of coverage. In that letter I also asked for a copy of Chubb's policy. You responded by again claiming no coverage because the Thibeaus' claim arose "out of the medical care provided" and that the claim "should be covered in its entirety under the Federally Supported Health Center Assistance Acts...." This response completely ignored the fact that there are separate and distinct claims based on different theories of liability. Because one theory of liability may be afforded coverage by the Federal Government does not mean that other theories of liability are not covered by the Chubb policy.

As you should be aware plaintiffs' second amended complaint set forth specific distinct claims and theories of liability against your insured (EBNHCC) and the United States. There was only one allegation that specifically targeted the medical care provided, that being the United States' failure to obtain Ms. Thibeau's informed consent for performing eye dilation by failing to warn of risks involved in such procedure. Otherwise allegations against the United States focused on various failures to warn of risks to visually impaired persons such as Ms. Thibeau. The allegations against EBNHCC focused on failures to warn of foreseeable risks of harm and dangerous conditions and failing to keep the premises reasonably safe. The Federal Government (through the U.S. Attorney's office) has continued to take the position that it will only provide coverage for the professional liability claim alone. If Chubb continues to deny coverage to the Health Center on the basis that the claim should be covered by the Federal Government, this exposes Chubb's insured to the risk of a verdict without coverage. I cannot believe that Chubb would so chose to expose its insured [or that its insured would allow itself to be so exposed] to the risk of a large verdict based on an incorrect interpretation of its insurance policy. If Chubb still continues to take this position the coverage denial and delay it has caused will, at a minimum, continue to constitute violations of the following sections of M.G.L. Ch. 176D §3(9):

> "(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;"

> "(c) Failing to affirm or deny coverage of claims within a reasonable time

Dan Burns
Chubb Specialty Claims
October 27, 2005
Page 4

after proof of loss statements have been completed;"

"(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

3. <u>Failing to effectuate prompt, fair and equitable settlement of a claim in which liability is reasonably clear.</u>

As you are aware Ms. Thibeau suffered an extremely serious injury when she fell at the bottom of the stairs at the Health Center on September 26, 2002. At the time of injury Ms. Thibeau's was suffering from a cataract and her eyes had been dilated. Thus, when she descended the stairs and fell her vision was significantly impaired.

The Health Center has a responsibility and duty to provide for the safety of its patients while they are in its offices and on the premises that are controlled by the Health Center. That duty begins when the patient enters the premises, and continues through treatment and through the time that the patient leaves the premises. It is well known that visual impairment results from dilation of the eyes during an examination such as Ms. Thibeau underwent. Eye dilation imparts a duty to protect the patient from and warn of the expected consequences of such treatment.

In fact the Health Center's general duty of care for the premises is enhanced for persons who, like Ms. Thibeau, are visually impaired. The Health Center was on notice that many persons leave the eye clinic and walk down the stairs in a visually impaired condition after having their eyes dilated. Thus, the Health Center knew or should have known that a significant number of persons leaving the eye clinic and walking downstairs to exit, would be visually impaired.

The stairs, as a condition of the premises, exposed visually impaired patients like Ms. Thibeau to an risk of harm. Ordinary stairs become inherently dangerous to persons who have had their vision impaired due to dilation. This is common sense. The Health Center should have known that the stairs would be dangerous to visually impaired persons such as Ms. Thibeau. The Health Center should have anticipated that visually impaired persons such as Ms. Thibeau might have difficulty walking down the stairs, might miss a step, fall and sustain injury. Thus, the Health Center had a duty to warn and protect persons like Ms. Thibeau of the increased risk of danger that the stairs posed to them.

The Health Center also failed to warn or advise Ms. Thibeau that there was an alternative to using the stairs (the elevator) that would alleviate the risk of walking down the stairs in a visually impaired condition. The Health Center also breached its duty of care by failing to post a notice that the elevator was in service and available for visually impaired patients to travel from the second floor to the ground floor. It also breached its duty by failing to recommend that its visually impaired patients use the elevator. The elevator would have allowed Ms. Thibeau to entirely avoid the risk of harm that the stairs represented.

The Health Center also breached its duty of care by failing to provide an adequate handrail where the stairs ended and where Ms. Thibeau fell. The Health Center should have provided an extended handrail at the bottom of the stairs to serve as a visual cue to persons with impaired vision (like Ms. Thibeau) that they had reached the end of the stairs and should adjust their gait as they stepped down. Clearly it was foreseeable to the Health Center that visually impaired patients such

Dan Burns
Chubb Specialty Claims
October 27, 2005
Page 5

as Ms. Thibeau would lack the ability to properly see the stairs, and that they would need an extended hand rail to serve as a cue that the stairs were ending; because such patients might forseeably miss a step at the end of the stairs, and stumble and fall as a result.

Chubb should have been aware of all of these facts since at least the time of my demand letter of July 3, 2003. Litigation and discovery have confirmed such facts.

It has been established that the employees of the eye clinic were all employees of the East Boston Neighborhood Health Center. In fact, Dr. Pietrantonio has significant regular contact with the director of the Health Center (Dr. Taylor) and the chief engineer for the Center (Dennis Buccieri), and is a member of the safety committee of the Center. Furthermore, Dr. Taylor and Mr. Buccieri were well aware that numerous patients leaving the eye clinic did so after having their eyes dilated; and that dilation caused those persons impairment of their vision. Thus, the Center is charged with knowledge of the fact that many persons descended the stairs in a visually impaired condition, caused by procedures at the eye clinic.

The Thibeaus' recent expert disclosure confirms the above contentions.[1] First, plaintiffs' expert Dr. Epstein states that dilating eye drops cause loss of contrast sensitivity, decreased depth perception, blurry vision, glare, sensitivity to light and disorientation. He also confirms that at the time of the accident Ms. Thibeau was suffering from a unilateral dense cataract, which further reduced contrast sensitivity, depth perception glare, sensitivity to light disorientation and blurry vision. In fact, the combined effect of the cataract and dilation caused Ms. Thibeau to suffer a greater increase in these symptoms than would be expected from the standard effects of dilation. This is something that the eye clinic staff should have known about; and since they are Health Center employees, their knowledge is chargeable to the Health Center.

Both Dr. Epstein and plaintiffs' architectural expert, Herbert Eisenberg concur that the stairs posed a risk for patients who had had their eyes dilated; and that signs should have been posted warning patients such as Ms. Thibeau of the existence of the elevator or that the elevator should be used rather than the stairs. Both Mr. and Mrs. Thibeau were unaware of the elevator when they descended the stairs immediately prior to the accident. Inspection of the premises reveals that the elevator is hidden around a corner on the first floor. Persons entering the building to go to the second floor are naturally directed to the stairs and are unlikely to see or know of the existence of the elevator as they climb the stairs to the second floor and direct themselves into the eye clinic. On leaving the clinic in a visually impaired condition it is unlikely that patients would notice the elevator, especially since there are no signs that note its existence or direct patients to the elevator; nor is there any indication that the elevator is for the use of the public or patients of the clinic.

Mr. Eisenberg notes that the lack of a handrail extension at the bottom of the stairs constituted a dangerous condition to visually impaired persons like Ms. Thibeau and that her fall was due to the lack of the handrail extension. Eisenberg notes that installation of a handrail extension is readily achievable and that the purpose of handrail extensions at the bottom of stairs is to warn visually impaired persons that the stairway is ending; and that a failure to have such extension naturally caused Ms. Thibeau to mistakenly believe that she had already reached the bottom of the stairs, thereby causing her to fail to adjust her balance and gait, causing her to fall. Eisenberg notes that her fall was also due to a failure of the clinic to instruct persons with impaired

---

[1] I have enclosed a copy of plaintiffs' expert disclosure recently filed with the Court, and incorporate such disclosure as part of this demand letter.

Dan Burns
Chubb Specialty Claims
October 27, 2005
Page 6

vision to use the elevator rather than the stairs; and a failure to have large print warning and directional signs to the elevator door on the second floor, which would have allowed Ms. Thibeau to notice and use the elevator, and avoid the dangerous condition at the bottom of the stairs.

As a result of these breaches of duty of care, Ms. Thibeau misstepped at the bottom of those stairs, fell and severely injured herself.

Thus, liability is reasonably clear. However, to this date Chubb has failed to acknowledge liability or make any offer of settlement other than the original, nominal offer of $5,000.00. By failing to acknowledge liability and make a reasonable offer of settlement, it is my opinion that Chubb has violated the following section of M.G.L. Ch. 176D Sec. 3 (9) as follows:

"(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

M.G.L. Ch. 93A, Sec. 9(1) incorporates violations of Ch. 176D as violations of Ch. 93A. Ch.93A, S.9(3) requires the court which hears a 93A claim to award damages of up to three, but not less two times the amount of actual damages for willful or knowing violations of Ch.93A, S.2. Chubb's actions, as set forth above, amount to willful and knowing violations of Ch.93A, S.2.

Furthermore, if you fail to make a reasonable written tender of settlement in response to and within 30 days of the mailing of this demand letter and if the Court finds for the Thibeaus in any action based on violation of Chapter 93A, the Court will also [aside from actual, double or treble damages awarded under Ch. 93A] award attorneys fees and costs in pursuing this 93A claim in court.

I look forward to your prompt response to this demand.

Very truly yours,

James L. Frederick

Encl.

Certified No. 7004 0750 0003 4917 1372

# EXHIBIT "B"

# RIEMER & BRAUNSTEIN LLP
## COUNSELORS AT LAW

Three Center Plaza · Boston, Massachusetts 02108-2003

(617) 523-9000 · Fax (617) 880-3456

E-Mail firm@riemerlaw.com

Mark W. Corner
Direct Dial: (617) 880-3418
Writer's Direct Fax: (617) 692-3418
E-Mail: mcorner@riemerlaw.com

New York, New York
(212) 302-8880 · Fax (212) 719-0140
Burlington, Massachusetts
(781) 273-2270 · Fax (781) 273-0776

December 2, 2005

**VIA FACSIMILE (617) 738-9497 AND**
**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

James L. Frederick, Esquire
Koufman & Frederick, LLP
1330 Beacon Street
Suite 311
Brookline, Massachusetts 02446

Re:  *Judith Thibeau v. East Boston Neighborhood Health Center*
     United States District Court - Civil Action No. 04-10643LTS
     Date of Loss: 9/26/02
     Policy No. 8165-9006
     Your File No. 02/43

Dear Mr. Frederick:

As you know, this firm and the undersigned represent Chubb & Son, a division of Federal Insurance Company, which acts as manager for its affiliate, Executive Risk Indemnity Inc. ("Chubb") in connection with the Health Care Organization and Provider Professional Liability Policy issued to East Boston Neighborhood Health Center (the "Center") for the policy period August 1, 2002 to August 1, 2003 (the "Policy"). We are writing in response to your letter dated October 27, 2005, which purports to be a demand on behalf of your clients, Judith Thibeau and her husband, George Thibeau pursuant to Massachusetts General Laws Chapter 93A, § 9, and Massachusetts General Laws Chapter 176D, § 3(9). Thank you for your courtesy in enlarging the thirty day statutory period to respond to your demand letter through and including December 2, 2005. As such, this response is deemed timely, by agreement.

We note at the outset that your letter of October 27, 2005 does not constitute a valid demand in accordance with G.L. c.93A, § 9(3) in that it does not adequately describe any unfair or deceptive act or practice, or unfair claim settlement practice, for which recovery may be sought. By responding to your letter, and by providing you with a reasonable offer of settlement, Chubb does not concede that your letter complies with the statutory requirements of G.L. c. 93A, § 9(3), nor does it waive the right to assert such non-compliance as an affirmative defense to an action that you may bring under G.L. c. 93A, § 9.

James L. Frederick, Esquire
December 2, 2005
Page 2

Additionally, this letter shall be deemed an offer of compromise, and as such is subject to appropriate evidentiary protections. It is intended to be inadmissible for any purpose in connection with the pending litigation against the Center, and is intended to be admissible only insofar as is necessary to demonstrate that a reasonable offer of settlement was made in response to your purported G.L. c. 93A demand, pursuant to G.L. c. 93A, § 9(3).

We respond substantively to the assertions contained in your letter by the topics that you have identified in your letter.

1.  **Failure to Pay Medical Expense Coverage (Medpay).**

You are correct that the Policy contains a Medical Expense ("Medpay") Endorsement, and provides for payment of medical expenses of up to $5,000.00 without regard to fault. You are incorrect, however, that Medpay coverage is available to your client in this instance, as such coverage is excluded by virtue of the claim arising from a "professional services wrongful act." This position on coverage was disclosed to you by letter dated February 13, 2003. As you know, prior to the sending of that letter and prior to the commencement of suit, the sum of $5,000.00 had previously been offered in full settlement of the Thibeaus' claims against the Center.

The "Medpay" coverage in the Policy is contained in Endorsement No. 16, which provides in relevant part as follows:

> In consideration of the premium charged, <u>solely with respect to the coverage afforded under Insuring Agreement (B) of the Policy</u> and subject to the terms and conditions set forth in this endorsement, it is understood and agreed that [Chubb] will pay on behalf of the Insured Medical Expenses, as described below, for Bodily Injury caused by an accident on premises owned or rented by the Named Insured [emphasis added].

Insuring Agreement (B) of the Policy is "Occurrence-Based General Liability Insurance." Such coverage is distinguished from the "Claims Made Professional Liability Insurance" coverage available under Insuring Agreement (A).

The Policy expressly provides that "Insuring Agreement (B) does not apply to, and [Chubb] will not pay any Loss or Defense Expense for, any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged Professional Services Wrongful Act." Here, by virtue of your assertion of claims arising out of the treatment provided by Mrs. Thibeau, you have asserted a claim that "arises out of" a "Professional Services Wrongful Act," which is defined within the Policy to mean "any actual or alleged act, error or omission, or series of acts, errors or omissions, by any Insured in rendering or failing to render Professional Services."

The services provided to Mrs. Thibeau on the date of the alleged occurrence constitute Medical Services, and as such constitute Professional Services, all as defined in the Policy. Accordingly, as a result of your assertion of a claim for a Professional Services Wrongful Act, the Policy is answerable solely under the Claims-Made Professional Liability Insurance Provision of the Policy (Insuring Agreement (A)), and as such provides an <u>exclusion</u> from coverage under the Occurrence Based General

James L. Frederick, Esquire
December 2, 2005
Page 3

Liability Insurance (Insuring Agreement (B)). Because there is no coverage provided under Insuring Agreement (B), there is similarly no entitlement to payment under the Medpay endorsement.

While you assert in your letter that "most of the Thibeaus' claims do not arise out of the medical care in the sense of a professional services wrongful act; and these claims are not based on professional services wrongful acts" (contrary to the opinions articulated by the Plaintiffs' experts, as discussed below), the exclusionary language contained in the Policy says otherwise. The term "arising out of" contained in an insurance policy, relating either to coverage or exclusions from coverage, is extremely broad. See, e.g., Monticello Ins. Co. v. Dion, 65 Mass. App. Ct. 46, 49 (2005) ("The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law.... Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation...").

Accordingly, where there is no coverage for Medpay, it was neither an unfair or deceptive act, nor an unfair claim settlement practice, to decline to provide your client with Medpay benefits at any time. See, e.g., Alan Corporation v. International Surplus Lines Insurance Co., 823 F. Supp. 33, 44 (D. Mass. 1993); Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 406 Mass. 7, 14 (1989); Gulezian v. Lincoln Insurance Co., 399 Mass. 606, 613 (1987) (first inquiry in determining whether an insurer's decision to deny coverage constitutes an unfair claim settlement practice is whether such denial was based on a plausible interpretation of the Policy).[1]

2. **Unreasonable Delay in Disclaiming Coverage, Failure to Forward Claim to Federal Authorities and Failure to Offer Reasonable Explanation for Denial of Claim by Disclaiming Coverage.**

You state in your letter that "between January 13 and August 12, 2003, there was no indication from Chubb that it would deny coverage on the belief that the claim arose out of medical care or that it was based on a professional services wrongful act." This statement is incorrect. By letter dated February 13, 2003, Dan Burns notified you that your "allegations arise out of the medical care and treatment provided to Mrs. Thibeau and the claim would be excluded from the Medical Expense Endorsement." That letter additionally states that Chubb "will not pay any loss or any claim based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any actual or alleged Professional Services Wrongful Act." Chubb's initial settlement offer of $5,000.00 to settle the disputed claim does not in any way result in an acceptance of coverage, or any waiver of Chubb's contention that Mrs. Thibeau's claim was not covered by the Policy, as you contend. The claim was at that time in its very early stages of investigation, and based upon the information that your office had provided, a coverage opinion was reached. That opinion was correct based upon the information available at the time it was made, remains correct based upon Chubb's continued investigation to date, and was communicated to you on a timely fashion.

---

[1] As you have been informed, Endorsement No. 3 of the Policy provides that "no coverage will be available under this Policy for claims for which the Insured is afforded coverage under the Federally Supported Health Centers Assistance Act of 1992 as amended and/or the Federally Supported Health Centers Assistance Act of 1995 as amended." Here, the Plaintiff has asserted a professional liability claim for which coverage is available from the United States Government, to which the Federal Tort Claims Act is applicable.

*RIEMER & BRAUNSTEIN LLP*
═══════COUNSELORS AT LAW═══════

James L. Frederick, Esquire
December 2, 2005
Page 4

      To the extent that you contend that Chubb failed to turn over the claim, subject to the Federal Tort Claims Act, in a timely fashion to the federal government (a contention that is not supported on either a factual or a legal basis), your client suffered no "injury" compensable under G.L. c. 93A, § 9. You contend that Chubb's late tender to the federal government "caused a thirteen-month delay in resolving Mrs. Thibeau's claim." This contention is wrong in two respects. First, Chubb can hardly be deemed responsible for the six months of that claimed thirteen-month delay associated with the federal government's inaction on the claim, which serves as a statutory stay of litigation. This six-month period, which is beyond Chubb's control, would have been present even if Chubb had immediately tendered the claim. As to the remaining period that you associate with the delay, the fact remains that the federal government has, in this case, made no offer of settlement, and is prepared to go forward with the trial, on a consolidated basis with Chubb's defense of the Center. Chubb is not responsible for any delays associated with either the commencement of suit, or associated with the litigation process. In any event, suit was not filed on behalf of the Plaintiffs against either the federal government or the Center until April 2004 - some eight months after you concede that Chubb tendered the claim to the federal government in August 2003.

      Finally, the fact remains that the Plaintiff has an affirmative duty to identify the appropriate party against which to bring suit. The federal government has, from the outset, been an appropriate target defendant in this case, and you at all times had the ability to act with reasonable diligence in tendering the claim to the federal government yourself.

      In summary, Chubb acted in all respects in a timely fashion, and in any event caused no "injury" to your clients compensable under G.L. c.93A, § 9.

3.   **<u>Failing to Effectuate Prompt, Fair and Equitable Settlement of a Claim in Which Liability is Reasonably Clear.</u>**

      Mrs. Thibeau certainly suffered a significant injury. However, it is well settled that the mere happening of an accident carries no presumption of negligence on the part of the defendants. Moreover, mere proof of injury to the plaintiff, no matter how serious, is not evidence of negligence on the part of the defendants. See <u>Borysewicz v. Dineen</u>, 302 Mass. 461 (1939) and <u>Tallon v. Spellman</u>, 302 Mass. 179 (1939). Chubb's investigation of the Thibeaus' claims, and discovery in this case to date, has established that the case is eminently defensible. Chubb has no obligation to put a fair and reasonable offer on the table until liability and damages are apparent, and here there exists a legitimate difference of opinion as to whether the Center is liable for Mrs. Thibeau's injuries. <u>See</u>, e.g., <u>Bobick v. United States Fidelity and Guaranty Co.</u>, 439 Mass. 652, 659-660 (2003). Indeed, the Center has filed a Motion for Summary Judgment in this matter, asserting as a matter of law that the Center has no liability, and that in any event, liability is limited by the $20,000.00 charitable immunity cap set forth in G.L. c.231, § 85K.

      First, the factual evidence developed in discovery strongly indicates that the Center was not liable for Mrs. Thibeau's injuries. Mrs. Thibeau testified at her deposition that, before falling, she took her hand off the railing a few inches before where the railing and stairway ended. As such, the absence of an extension of the railing had no causal relationship to her fall. Additionally, Mrs. Thibeau's failure to use the full length of the stair rail, in light of her impaired vision, is evidence of her contributory negligence. Dr. Taylor of the Center did not recall any other incidents in the past thirty-five years where someone had

James L. Frederick, Esquire
December 2, 2005
Page 5

fallen in the subject stairwell, as might have made Mrs. Thibeau's accident reasonably foreseeable. It is undisputed that Mr. Thibeau, who was accompanying and assisting his wife as she descended the stairs, abandoned her before her fall. Furthermore, Chubb's investigation indicates that Mrs. Thibeau and her husband received all appropriate warnings from the eye care physicians providing her with medical service on the date of her accident, contrary to your assertion that she did not. Medical records indicate that each patient seen by Rick Price on September 26, 2002, the date of Mrs. Thibeau's accident, was given a dilation warning. In any event, both Mrs. Thibeau and her husband have treated at the Center for twenty-four (24) years, and had been receiving eye care (including dilation) at the Center since 1989. We are aware of no evidence that either Mrs. Thibeau or her husband had previously encountered any difficulty with the stairs or the rail in the thirteen (13) years in which had received eye treatment at the Center prior to her accident. Both were, or should have been aware, of the existence and location of the elevator. In short, the evidence developed to date leads to two conclusions: that the Center was not negligent, and that Mrs. Thibeau's injury was caused by her own negligence.

Second, the Plaintiff's own expert witnesses support the position that the Center was not negligent. Herbert W. Eisenberg, AIA, the Plaintiff's own expert witness, states that "the Health Center is an existing building and is not required to upgrade its facilities to meet current codes." Only if the Center building were to undergo renovations would it be required to extend the handrail, which he contends may have avoided Mrs. Thibeau's injury. Mr. Eisenberg further attributes Mrs. Thibeau's fall to the fact that "she was descending the stairs in a visually impaired condition." Thus, the Plaintiff's liability expert's contention, in a best case scenario, would put the Center jointly and severally liable with the federal government.

Furthermore, we understand that you were provided, prior to your sending of the purported G.L. c.93A demand letter, the Center's expert witness disclosures. These expert reports confirm that the Center committed no building code violation, and violated no other standard of care. Additionally, these experienced engineers opined that, if the handrail were extended in the manner advocated by the Plaintiffs, it would pose a safety hazard given the configuration of the existing building and landing, and would cause a bottleneck at the foot of the stairs.

In summary, Chubb's investigation reveals (i) that the Center has neither violated any building code nor any other standard of care that would give rise to an independent basis for negligence, without regard to her receipt of medical treatment from the Center; (ii) the Plaintiff's expert contends that, but for the allegedly negligent medical services provided to Mrs. Thibeau by the federal government, her fall would not have occurred; (iii) in fact, there is no evidence that Mrs. Thibeau did not receive an appropriate warning concerning the dilation of her eyes; (iv) Mr. Thibeau, who was accompanying Mrs. Thibeau and who was present when the instructions were given to Mrs. Thibeau, and who was believed by Center medical personnel to be accompanying Mrs. Thibeau out of the building when such instructions were given, deserted Mrs. Thibeau as she was descending the stairs, giving rise to an appropriate affirmative defense; and (v) the degree of Mrs. Thibeau's contributory negligence was so significant as to her recovery under Massachusetts law. Accordingly, the liability of the Center was by no means "reasonably clear" at any time. As such, any failure on the part of Chubb to make an offer of settlement does not constitute an unfair claim settlement practice, or an unfair or deceptive act.

*RIEMER & BRAUNSTEIN* LLP
COUNSELORS AT LAW

James L. Frederick, Esquire
December 2, 2005
Page 6

### 4. Offer of Settlement.

Notwithstanding the significant questions concerning both liability and coverage, Chubb has authorized me to offer the sum of $50,000.00 in full settlement of all claims that the Thibeaus have or may have had against both the Center and Chubb as well as any affiliates of either, concerning Mrs. Thibeau's alleged injury occurring on or about September 26, 2002. Additionally, Chubb is prepared to send the sum of $5,000.00 to Mrs. Thibeau in full satisfaction of any claims that she may have with respect to the Medpay provision of the policy, irrespective of whether she accepts Chubb's global offer of settlement. Chubb is arranging for preparation of a check in that amount payable to Mrs. Thibeau, or as you direct. This $5,000.00 payment will be sent without the requirement of a release of any claims that Mrs. Thibeau may have against Chubb or the Center, but is sent with the caveat that is being made without prejudice to the Center's denial that it is liable for her claims, or that there is coverage for Medpay under the Policy (for the reasons noted in Section 1 above).

Chubb remains willing to consider any additional further information you wish to bring to our attention. Please feel free to call me if you wish to discuss this matter.

Thank you for your attention and courtesy.

Very truly yours,

Mark W. Comer

MWC/jlk/eag

**RIEMER & BRAUNSTEIN LLP**
COUNSELORS AT LAW