UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

JUDITH THIBEAU
and GEORGE THIBEAU,
          Plaintiffs,

v.

UNITED STATES OF AMERICA
and EAST BOSTON NEIGHBORHOOD
HEALTH CENTER CORPORATION
          Defendants.

Docket No. 04-10643MLW

## PLAINTIFFS' OPPOSITION TO DEFENDANT EAST BOSTON NEIGHBORHOOD HEALTH CENTER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby state their opposition to defendant East Boston Neighborhood Health Center Corporation's motion for summary judgment as whether it is liable to plaintiffs; and as to whether any damages against it would be capped under G.L. c. 231 Sec. 85K.

1.      The Standard for Consideration of a Motion for Summary Judgment.

The party moving for summary judgment "has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." Foley v. Matulewicz (Mass. App. Ct. 1984) 459 NE 2d 1262, citing Community Natl. Bank v. Dawes, 369 Mass. 550, 554, 340 NE 2d 877 (1976). "The movant is held to a stringent standard ... any doubt as to the existence of a genuine issue of material fact will be resolved against [him]. Because the burden is on the movant, the evidence presented ... always is construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences that can be drawn from it." 10A Wright, Miller and Kane, Federal Practice and Procedure §2727 at 124-125 (1983). "A court should not grant a party's motion for summary judgment 'merely because the

acts he offers appear more plausible than those tendered in opposition, or because it appears that adversary is unlikely to prevail at trial.' Hayden v. First Natl. Bank, 595 F.2d 994, 997 (5th Cir. 1979), quoting 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure §2725, at 514 (1973)." Foley v. Matulewicz, supra at 1262.

Furthermore, the court should be cognizant that, when considering a motion for summary judgment, "It is not the function of [the] court to pass upon the credibility of witnesses or the weight of the evidence, much less to make ... decision[s] of fact." Hub Associates v. Goode, (Mass. 1970) 258 NE2d 733, 735. Finally, it should be noted that "... summary judgment is rarely granted on the merits of a negligence action because of the jury's unique competence in applying the reasonable man standard to a given fact situation" (citations omitted) Foley v. Matulewicz, supra at 1263.

"Usually "the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury. [citations omitted]" Mullins v. Pine Manor College, 389 Mass. 47, 56, 449 N.E.2d 331 (1983).

2. <u>Motion for Summary Judgment on Charitable Immunity Cap is Premature and Should Not Be Considered by This Court</u>

The question of whether damages should be so capped is premature and should not be addressed or ruled on by this court. This is because, as of the date of the defendant's motion for summary judgment, the defendant had not stated in its answer to plaintiffs' second amended complaint the affirmative defense of the charitable immunity cap. This cap on damages is an

affirmative defense that must be pled in a defendant's answer; and failure to plead such defense constitutes a waiver of such defense.

On the same date (November 14, 2005) that defendant filed its motion for summary judgment the defendant also filed a motion to amend its answer to add the affirmative defense of charitable immunity cap. Plaintiffs filed their opposition to defendant's motion to amend on November 28; and the court has yet to act on such motion. Thus, as of the date that defendant filed its motion for summary judgment it had not actually pled the charitable immunity cap; and therefore to move for summary judgment on the question of whether the charitable immunity cap applies to the defendant is premature and should not be considered by the court.

Furthermore, since the cap has yet to be pled (if the court is even to allow it to be pled, which plaintiffs vigorously oppose) plaintiffs have not been able to explore the factual basis for the claim of charitable immunity cap through discovery (since the issue never had arisen until defendant's motion to amend). Thus, at a minimum, if the court were even to consider the question of the charitable immunity cap on a motion for summary judgment, the court should postpone consideration of the question until plaintiffs are allowed to pursue discovery on this question.

3.  <u>Defendant's Motion for Summary Judgment on Liability Should Be Denied Because Testimony of Plaintiffs' Liability Expert is Admissible</u>

Defendant's argument for summary judgment is primarily based on its contention that the opinion testimony of plaintiffs' expert Herbert Eisenberg is inadmissible, because the expected testimony is based on speculation and not based on the facts of the accident as testified to by Ms.

- 3 -

Thibeau. A full reading of Eisenberg's report shows that such opinion is not based on speculation and is admissible. Thus defendant's motion should be denied.[1]

The thrust of defendant's argument against Eisenberg's opinion is that Eisenberg's expected testimony is based on an incorrect assumption; i.e. "that "Mrs. Thibeau arrived at the end of the handrail." Defendant then argues that Eisenberg's opinion [that had the handrail extended beyond the end of the stairs, Mrs. Thibeau would not have fallen] is excludable because it is "not based on the true and actual facts [i.e. that Ms. Thibeau had taken her hand off the inner handrail four to six inches before the handrail ended rather than that Ms. Thibeau "arrived at the end of the handrail"] of the case..." and therefore is speculative. The basis of defendant's argument is incorrect because Eisenberg's report does state the facts correctly; i.e. Ms. Thibeau did arrive at the end of the handrail immediately before she fell. Eisenberg says nothing about whether her hand was on the handrail or when or where she took her hand off the handrail.

The facts stated in Eisenberg's opinion report are consistent with the facts of the case as cited by the defendant in its motion; and therefore are not incorrect or speculative. Therefore, the opinion is not based on speculation. Eisenberg states on the first page of his report the following:

> "It is my understanding that Ms. Thibeau had been visiting the Eye clinic that day and was leaving the second floor location via the stairs. Ms. Thibeau's eyes had been dilated during her visit and, therefore, her vision was impaired at the time of descent. While descending and upon reaching the last tread of the stairs, the handrail ended with one riser still to descend. At this point, she stepped forward

---

[1] Defendant also objects to Eisenberg's opinion because Eisenberg does not (and cannot) testify that the handrails were in violation of any applicable code. Defendant cites no authority for the proposition that Eisenberg's testimony should be excluded just because he will not say that the handrails were in violation of any code.

and her foot suddenly descended causing her to lose her balance, fall forward and be injured."

Later in his opinion, Eisenberg states:

> "In this case, Ms. Thibeau arrived at the end of the handrail before reaching the floor landing and the fall was inevitable."

Defendant also fails to point out that Eisenberg also thoroughly inspected and accurately described the premises in his report. Defendant does not contest the accuracy of Eisenberg's observations of the premises.

Defendant also fails to point out a crucial factor that Eisenberg considered in rendering his opinion; i.e. that Ms. Thibeau was descending the stairs at the time of her accident in a "visually impaired condition." The gist of Eisenberg's opinion with regard to the handrails is that there are certain well known regulations and guide books that deal with handrails and address the significance of handrails (and how they are constructed) to visually impaired persons. He notes that requirements of the Mass. Architectural Access Board and the Americans With Disabilities Act "are intended to assist the physically impaired and that includes those who are visually impaired." He also quotes from a document entitled "Design for Access, a guidebook for designing barrier free state and county buildings" that handrail extensions beyond the top and bottom treads "warn[s] visually impaired people that the stairway is ending." Further, Eisenberg explains the significance of the lack of handrail extension to visually impaired persons:

> The ending of the handrail signals the end of the stairs which is normally at the landing level and the expectation would be that the next step is on a landing platform or floor. On reaching the floor, or landing level, the body center of

>gravity would be moving forward for a straight step ahead instead of descending for a step down.

Eisenberg then connects these concepts to the facts of the case.

>In this case, the handrail is a contrasting color from the wall and closer to eye level than the steps and floor below. The horizontal extension would indicate that the landing had not been reached and the last step would be down to the floor level where the adjustment of balance and gait for level walking could commence. In this case, Ms. Thibeau arrived at the end of the handrail before reaching the floor landing [true fact] and the fall was inevitable.

Eisenberg then concludes that Ms. Thibeau's fall was "due to the lack of the handrail extension ...." This conclusion logically flows from Eisenberg's observations of the stairs, his knowledge regarding the importance of extended handrails for visually impaired persons, the visually impaired state of Ms. Thibeau and the fact that she fell when she reached the end of the handrail. There is no question that she fell at the point where the handrails ended; i.e. she fell when she reached the end of the handrail ["At this point, she stepped forward and her foot suddenly descended causing her to lose her balance, fall forward and be injured."].

Defendant misreads Eisenberg's report in part by focusing on the fact that Ms. Thibeau removed her hand from the inner handrail four to six inches from where the handrail ended, and which defendant characterizes as "well before the railing ended." First, Eisenberg says nothing about where Ms.Thibeau took her hand off the handrail. Eisenberg states that Ms. Thibeau "arrived at the end of the handrail." That is exactly what happened. Her deposition testimony does not change that fact. Second, whether she took her hand off the handrail "well before the railing ended" and whether four to six inches from the end of the handrail end is "well before" the end of the railing is an assessment or weighing of fact testimony. Such an assessment of fact

testimony is reserved for the fact finder or jury; and should not serve as the basis of a motion for summary judgment.

By it's misreading of Eisenberg's expected testimony (i.e. that Eisenberg "assumed that "Ms. Thibeau arrived at the end of the handrail.") defendant concludes that his opinion is "not based on the true and actual facts of the case which is a particularly compelling deficiency given that Mr. Eisenberg does not identify that he even read Mrs. Thibeau's deposition as part of his report." As noted above Eisenberg says nothing about where Ms. Thibeau removed her hand from the handrail, but only says, accurately, that she "arrived at the end of the handrail" and thereafter fell. The whole import of his expert report and opinion is that the missing handrail extension would have served as an important visual cue that the stairs had not yet ended; and that the lack of such visual cue caused her to fail to adjust her step, lose her balance and fall.

Furthermore defendants also argue that there is no basis for Eisenberg's opinion that "a longer handrail would have prevented her fall …." This conclusion is erroneous because it fails to consider the full extent of Eisenberg's opinion; i.e. that the handrail extensions serve as important warnings or cues to denote the actual end of the stairs [the first floor landing rather than the first step]. Ms. Thibeau failed to adjust her gait and balance due to this fact, and therefore misstepped and fell. There is no evidence of causation of Ms. Thibeau's accident because of the lack of handrail extensions; and the issue of causation is a fact question that should be reserved for the jury and not disposed of by summary judgment. Mullins v. Pine Manor College, supra at 58. ["The question of causation is generally on of fact for the jury."]

B.   <u>Eisenberg's opinion has basis in facts of case and it is up to the jury to decide what weight to give to that opinion</u>

Defendant compounds it's error by also stating that "[e]ven if he did rely on Mrs. Thibeau's deposition, since Mrs. Thibeau testified she took her hand off the handrail four to six inches from the end of the handrail before she fell, the "expert opinion" that Mrs. Thibeau would not have fallen had a handrail been extended has no basis in the facts of the case." Again this statement misreads Eisenberg's opinion. Clearly, Eisenberg has viewed and inspected the premises and has applied his knowledge and expertise to the structures at the premises, including the stairs and handrail. The weight to be given to that opinion is up to the jury. Eisenberg's opinion is supported by facts and by his experience, education and knowledge of regulations and guidelines regarding stairs and handrails.

As noted above the import of Eisenberg's opinion is that one of the important reasons for handrail extensions is to serve as an important warning or cue for visually impaired persons (such as Ms. Thibeau and other Eye clinic patients) that the stairs have ended (on the landing level) and that the next step would therefore be on the landing level or floor; so that the person descending the stairs would be able to accurately adjust their balance and gait because they could accurately gauge the end of the stairs. The fact that handrail extensions serve as warning or cues as to where the stairs are ending for visually impaired persons does not depend of Ms. Thibeau's testimony. Rather, this is a factor that is spelled out in the regulations and guidelines that serve as part of the basis of Eisenberg's opinion. Defendant's objection to Eisenberg's opinion totally fails to consider this crucially important aspect of Eisenberg's opinion. Therefore, defendant has

failed to state a sufficient basis for exclusion of Eisenberg's opinion; and the court should disregard this argument as a basis for summary judgment.

4.   Open and obvious

   A.   The doctrine of open and obvious danger does not bar recovery because it only addresses the duty to warn of defect or dangerous condition.

The defendant's failure to advise Judith Thibeau of the existence of an elevator was not the sort of situation to which the doctrine of open and obvious danger applies. That doctrine states that there is no duty to warn of the existence of a defect or dangerous condition if that condition is open and obvious. The doctrine of open and obvious does not apply because plaintiffs do not allege that the elevator is a defect or dangerous condition. Rather plaintiffs argue that defendant breached its duty to maintain the premises in a reasonably safe condition by failing to post signs and otherwise alert visually impaired persons such as Ms. Thibeau of the existence of the elevator and its availability for use by patients as an alternative to the stairs. Plaintiffs allege that the Health Center owed a duty of reasonable care; and to act "as a reasonable man in maintaining his property in a reasonably safe condition in view of all circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." Mounsey v. Ellard supra at 52 citing Smith v. Arbaugh's Restaurant, Inc. 469 F2d 97, 101 (D.C. Cir.); and that failure to advise visually impaired patients such as Ms. Thibeau that there was a safer way to travel from the second to the first floor; i.e. by advising them of the existence and the usability of the elevator.[2]

---

[2] Even if the court applies the open and obvious doctrine to this case (which plaintiffs maintain is not applicable) whether the elevator was open and obvious also requires a factual finding as to whether Judith Thibeau was a person of ordinary perception and judgment at the time that the allegedly open and obvious condition of the elevator was at

5. <u>Knowledge of problem with stairs or handrail</u>

Defendant argues that it cannot be held liable for Ms. Thibeau's accident as caused by the condition of the stairs or handrail because there is no evidence that the Health Center had any prior notice of any alleged hazard or defect with regard to the stairs or handrail. To support this argument defendant states that there is no evidence that the Health Center was aware of any falls on the stairwell or had any knowledge of any hazard or defect on the stairs. However, the law does not state that one in control of premises has to have actual knowledge of a defect or hazard. Rather, the test is whether the party in control of the premises knew or should have known of such hazard. "The obligation of one who controls business premises is to use due care to keep the premises provided for the use of its patrons in a reasonably safe condition, or at least to warn them of any dangers that might arise from such use, which are not likely to be known to them, and of which the defendant knows or ought to know. [citations omitted]" <u>Oliveri v. Massachusetts Bay Transp. Authority</u>, 363 Mass. 165, 166-167, 292 N.E.2d 863 (1973

---

issue. See <u>O'Sullivan v Shaw</u>, 431 Mass. 201, 204, 726 N.E.2d 951 (2000) ["Stated otherwise, where a danger would be obvious to a person of ordinary perception and judgment, a landowner may reasonably assume that a visitor has knowledge of it and, therefore, "any further warning would be an empty form" that would not reduce the likelihood of resulting harm. [citations omitted]"] It also requires an assessment of facts regarding the appearance, location and noticability of the elevator, which is the province of the jury.

At that time Ms. Thibeau was visually impaired, in that her eyes had been dilated and she was suffering from a cataract on one eye that further impaired her vision. The extent of that impairment and whether that made Ms. Thibeau a person of less than ordinary perception and judgment is a decision that should be left to the jury. "The granting of summary judgment in a case where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored." <u>Quincy Mut. Fire Ins. Co. v. Abernathy</u> (Mass. 1984) 469 NE2d 797, 800. Certainly, whether Judith Thibeau was of ordinary perception and judgment, is a material fact; and there is a genuine issue of whether she was capable of exercising ordinary perception and judgment at the time when she left the eye clinic and failed to notice the elevator, when the Health Center should have made sure to warn her of the existence of the elevator and the fact that she could use it so as to avoid the danger that the stairs posed to a person of impaired vision.

"The standard of care owed to the plaintiff as a business invitee is clear. It was the duty of the invitor to use reasonable care to keep the premises in a reasonably safe condition for the use of business invitees according to their invitation, or at least to warn them against any danger attendant upon this use which was known or should have been known to . . . (the invitor) and was not known by the business invitees or obvious to any ordinarily intelligent person. [citations omitted]" Ventor v Marianne, Inc., 1 Mass.App.Ct. 224, 225 (1973).

"The defendant owed to customers a duty to keep the premises reasonably safe for their use. …. Where; without action for which he is responsible, a dangerous condition arises, the law allows him reasonable opportunity to become informed of the danger and to take measures to remedy it. He is not liable, in such a case, unless he is negligent in failing to inform himself and to take appropriate action. [citations omitted]" White v Mugar, 280 Mass. 73, 75, 181 N.E. 725 (1932).

In this case plaintiffs argue that defendant Health Center should have known that the lack of handrail extensions was a dangerous condition for visually impaired persons such as Ms. Thibeau, and that defendant's failure to remedy that situation was negligent. This argument is based on Mr. Eisenberg's expected testimony, which in part is based on the standards set forth in the requirements of the Mass. Architectural Access Board and the Americans With Disabilities Act and the knowledge that persons descending the stairs at the Health Center are often visually impaired.

There is evidence that the stairs in the particular building where the accident occurred (79 Paris Street) have been in the same condition for many years (and well before the date of Ms. Thibeau's accident in 2002) and that the second floor of that building has been used by the eye clinic for 20 years or more.  Deposition of Dr. James Taylor , pp. 7, 23, 82-83.  The defendant's facilities director, Dennis Buchieri, was aware that there is an eye clinic on the second floor of the building at 79 Paris Street.  Buchieri deposition pp. 7, 52.  Buchieri, who is responsible for maintenance, construction and safety at the building, has had specialized training with regard to making building, handicapped accessible.  Id. pp. 19, 43.  Buchieri has substantial experience with handrails, having installed them in a number of buildings owned or maintained by the Health Center.  Id. pp. 100-106.  Buchieri is aware that the law sometimes requires handrails to extend beyond the bottom of stairs; and that these extensions can be safety improvements.  Id. pp. 107-108.  Further, Buchieri is aware that an extended stair railings may improve the safety of the stairs and stair railing.  Id. pp. 108-109.  Buchieri is also aware that extending the stair railings at the bottom of the stairs at 79 Paris Street might improve the safety of those railings.  Id.  pp. 110-111, 115-116.

Thus there is evidence that, for many years prior to Ms. Thibeau's accident, the Health Center's employees had knowledge of the condition of the stairs and handrails and the visually impaired state of many eye clinic patients using those same stairs.  There is also evidence that the Health Center through Dennis Buchieri had knowledge of handicapped accessibility laws and the importance of extended handrails for stairway safety.  Therefore, there are sufficient facts to prove – either directly or by reasonable inference - (and thereby create an issue for the jury) that the Health Center either knew or should have known that the failing to have extended handrails

downstairs from the eye clinic at 79 Paris Street constituted a dangerous condition for visually impaired persons. Thus, it should be up to a jury to decide whether the Health Center was negligent in failing to have extended handrails at the bottom of the stairs.

## CONCLUSION

For all of the above reasons this court should deny defendant's motion for summary judgment.

```
                                        Plaintiffs,
                                        Judith and George Thibeau,
                                        by their attorney,


                                        _____
                                        James L. Frederick, Esq.
                                        BBO #543597
                                        Koufman & Frederick, LLP
                                        1330 Beacon Street, Suite 311
                                        Brookline, MA 02446-3202
                                        (617) 738-7880
```

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing pleading was served upon the following attorney(s) VIA FIRST CLASS MAIL:

Christopher Alberto, Esq.
Assistant U.S. Attorney
United States Attorney for the District of Massachusetts
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

Tory A. Weigand, Esq.
Morrison Mahoney, LLP
250 Summer Street
Boston, MA 02210

DATED: 12/6, 2005

James L. Frederick, Esq.
BBO #543597
Koufman & Frederick, LLP
1330 Beacon Street, Suite 311
Brookline, MA 02446
(617) 738-7880