UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JUDITH THIBEAU, | ) | |
| And GEORGE THIBEAU, | ) | |
|     Plaintiffs | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION |
| | ) | NO. 04-10643 LTS |
| UNITED STATES OF AMERICA | ) | |
| and EAST BOSTON NEIGHBORHOOD | ) | |
| HEALTH CENTER CORPORATION, | ) | |
|     Defendants | ) | |

**DEFENDANT, EAST BOSTON NEIGHBORHOOD HEALTH CENTER'S
REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I.    **EBNHC Is Entitled to Summary Judgment As There Was No Breach of Any Duty As A Matter of Law**

Plaintiffs argue that EBNHC breached its duty to maintain the premises in a reasonably safe condition "by failing to post signs and otherwise alert" Mrs. Thibeau "as to the existence of the elevator." Plaintiffs cannot, and do not, cite to any case or applicable code provision remotely supporting the assertion that EBNHC owed such a duty. The duty to use reasonable care to keep the premises in a reasonably safe condition and/or to warn of dangers not obvious to the ordinary person but which dangers were known to the defendant, does not include an obligation to inform of the presence of an elevator. See O'Sullivan, 431 Mass. at 201 (whether defendant had a duty of care is a question of law for the court).

That Thibeau had her eyes dilated as part of her eye care does not change EBNHC's duty as an occupier of land.[1] There is no duty to warn or inform as to conditions which are open or obvious to persons of average intelligence. See Young v. Atlantic Richfield, Co., 400 Mass. 837,

---

[1] Any duty to inform pertaining to eye dilation would, if at all, be with the eye care providers as part as the duty to provide reasonable professional care and treatment. Such a claim would be part of the FTCA claim.

977979v1

841-43 (1987)(gas station had no duty to post sign stating "attendant on duty" or to warn as to other vehicles). Moreover, whether viewed as an open or obvious condition or not, there was no duty to post signs to alert Ms. Thibeau of the existence of the elevator. This is especially true here where it is undisputed that Thibeau had been to the building many times before, had her eyes dilated there at least two times before the accident, knew to watch for her own safety following eye dilation, had used the stairs each time she was at the clinic, had no concerns about using the stairs, and never asked about any elevator.[2] Indeed, there is no evidence that EBNHC ever knew or understood that Mrs. Thibeau did not know of the elevator which is only inches/feet from the stairwell. EBNHC is entitled to judgment on this claim.

EBNHC was likewise under no duty, as a matter of law, to extend the handrails in the stairwell. Plaintiffs' reference to the Massachusetts Architectural Access Board (MAAB) and American with Disabilities Act (ADA) regulations which require handrail extensions in certain circumstances is unavailing as these provisions are inapplicable as a matter of law. These handicap regulations do not apply to 79 Paris Street or this case and the stairs and handrails do not violate any applicable codes.[3]

In support of their argument that the duty of care obligated EBNHC to go beyond the applicable codes and install extended handrails, plaintiffs assert that EBNHC was on notice that the lack of extended handrails posed a "dangerous condition for visually impaired persons."

---

[2] Thibeau Depo. at 25-36; 42-43; 57-58; 66; 67; 151-153 (**Exh. 1**) hereto. In Undisputed Fact No. 24 previously submitted to the court, the citation should be J. Thibeau at 36-37; 151-153 not 27. (**Exh. 1**).

[3] As Eisenberg (plaintiff's expert) concedes in his report, the building at 79 Paris Street, owned by the Robert White Fund, is grandfathered from both the current state building code and the MAAB regulations. Eisenberg also does not and cannot argue that the ADA standards apply. The ADA applies to "discrimination" actions on behalf of "disabled" persons. This is not a "discrimination" action. Moreover, Thibeau was not a "disabled person" protected by the ADA. Even assuming that her cataract and eye dilation on the day of her fall can be considered an impairment, it is black letter law that such temporary impairments do not render an individual disabled for purposes of the ADA rendering the standards inapplicable and inadmissible. EBNHC will be filing a motion in limine addressing this and other issues in the event summary judgment is denied-which it should not be - and nothing herein or in any subsequent ruling is or should be considered a waiver of prospective arguments.

2

They rely, in turn, on the fact that the eye clinic was on the second floor, that various patients of the eye clinic had their eyes dilated and used the stairs over many years, and that Buchieri, EBNHC's facilities manager, testified that "the law" sometimes requires extended handrails and that such extended handrails may improve safety.

Not only do the handrails not violate any applicable codes,[4] but the EBNHC was not on notice of any dangerous condition. The fact that some patients of the eye clinic have their eyes dilated and may use the stairs does not, as a matter of law, establish a dangerous condition. The eye clinic has been at 79 Paris Street for 20 years with no incident. There is no evidence that any other patient at any other time had any complaint or problem with the handrails. There were no prior falls and no prior complaints. See e.g., Toubiana v. Priestly, 402 Mass 84, 91 (judgment entered as a matter of law as no evidence of prior similar incidents of which defendant had knowledge). Thibeau herself had been to the eye clinic numerous times before over the course of many years including at least two prior times when she had her eyes dilated and had no problem or concern with the handrails. EBNHC is entitled to summary judgment.

## II. Eisenberg's Opinion Violates Daubert's "Fit" Requirement Entitling EBNHC to Summary Judgment

The assertion that Eisenberg's "expert opinion" satisfies Daubert not only ignores Thibeau's actual testimony but assumes contradictory facts unsupported by any testimony.[5] Thibeau testified that she took her hand off the handrail four to six inches from the end of the handrail prior to her fall; that she never stepped on the last step; that she "missed the last step" to the stairs, stepping "over it" when she fell, and that she injured her ankle on the edge of the

---

[4] See footnote 3 supra.
[5] Neither Eisenberg's report nor plaintiffs' opposition contain any indication that Eisenberg ever read Thibeau's deposition testimony describing the accident. It is the facts of the case not Eisenberg's "understanding" upon which any possibly admissible expert opinion must be based.

3

977979v1

second step.[6]  There is no dispute that the handrail ends at the end of the last step of the stairs and Thibeau's description is that she had not reached the end of the handrail or the steps before she fell despite any belief to the contrary.  The assertion that an extended handrail would have served as a cue that the stairs were ending so as to allow for her to adjust her gait is of no moment and ignores the facts of this case.  Thibeau fell before either the handrail or stairs ended (never stepped on last step; stepped over it; injured ankle on edge of second step) and did not have her hand on the handrail at the time of her fall.  Eisenberg's opinion that Thibeau had reached the end of the stairs and that an extended handrail would have prevented the fall is pure speculation and not based on Thibeau's testimony but his own "understanding," thus forming a conclusion

---

[6]
    Q.    Why don't you tell me what happened as you went down the stairwell?
    A.    I thought I was at the bottom of the stairs and I missed the last step.
    Q.    When you say you missed the last step, what do you mean?
    A.    Well, I stepped over it.  I believe I missed that step and that's when I fell.  I went forward.
    Q.    Do you know what your left ankle hit to cause the break?
    A.    The step, the edge of the step.
    Q.    When you say the end of the step, the last step?
    A.    I believe it was the second step.
Thibeau Depo. at 62 (**Exh. 1**)..
    Q.    So you let go of the railing?
    A.    Right.
    Q.    And then you have a memory of missing the [second] step?
    A.    Yes.
Id. at 64 (**Exh. 1**).
    Q.    And do you have a memory at all of ever stepping on the last step.
    A.    No.
Id. at 71 (**Exh. 1**).
    Q.    And the railing that's pictured there, is that the railing where you had your left hand on at the time?
    A.    Yes.
    Q.    And where is your best memory that you took your hand off the railing.
    A.    Right here (indicating)
    Q.    So when you point, you're pointing to the second iron rail from the end is about where you took your hand off?
    A.    Yes.
    Q.    Could you take a pen and just put an X where you believe you took your hand off the rail.
Id. at 69 (**Exh. 1**).
    Q.    And just so I have it correct, the X and the circle around it is where you took your hand off, is that correct?
    A.    Yes, I believe so.
    Q.    And what would you estimate four to six inches from the end of the railing is where you took your hand off approximately?
    A.    Yes.
Id. at 76 (**Exh. 1**).

977979v1

not grounded in the facts of this case and, therefore, violating <u>Daubert</u> and entitling EBNHC to summary judgment[7]

## CONCLUSION

Based on the foregoing, the East Boston Neighborhood Health Center requests that summary judgment enter in its favor.

Respectfully submitted,
The Defendant,
East Boston Neighborhood Health Center

By its attorneys,

/s/ Tory A. Weigand
_____
Tory A. Weigand, B.B.O. No. 548553
Charles M. Urso, B.B.O. No. 647748
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Tel: 617-439-7500

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2005, a true copy of the above document was served upon each counsel of record electronically through filing with the ECF system.

/s/ Tory A. Weigand
_____
Tory A. Weigand

---

[7] The assertion that the "gist" or "crucial" aspect of Eisenberg's opinion is that the MAAB and ADA regulations and/or standards require handrail extensions as they provide a cue for the visually impaired does not save Eisenberg's opinion from the requirements of <u>Daubert</u>. There is no dispute that the state MAAB and Federal ADA regulations <u>do not</u> apply to the building and handrail at issue. <u>See</u> footnote 3 <u>supra</u>. Also, Buchieri's testimony that extending handrails generally "may" be a safety aid is unavailing. Buchieri was clear that such extensions do no apply to existing buildings like 79 Paris Street and that, in fact, extending a handrail out, especially on the left hand side would create a safety hazard due to it being a traffic area. Buchieri at 108; 117 (**Exh. 2**).

5

977979v1