UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JUDITH THIBEAU ) | |
| and GEORGE THIBEAU, ) | |
| ) | |
| Plaintiffs, ) | C.A. No. 1:04-cv-10643-LTS |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA and EAST ) | |
| BOSTON NEIGHBORHOOD HEALTH CENTER ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION TO STRIKE PORTIONS OF EXPERT'S TRIAL TESTIMONY**

The United States of America, pursuant to, *inter alia,* Local Rule 26.4, moves this Court for an order striking those portions of Dr. Arthur Epstein's ("Epstein") testimony that (1) fall outside the scope of his expert's report, (2) stray from the field of optometry, and (3) result in unfair prejudice. Specifically, the United States seeks the Court to strike the following portions of Epstein's testimony: [1]

| Topic | Page/Line | Reasons for Striking Testimony |
|---|---|---|
| I | 25:23-29:5<br>34:16-37:16<br>53:14-57:23 | Adequacy and essence of the warning:<br>    Testimony outside bounds of report. LR 26.4<br>    Probative value outweighed by unfair prejudice. FRE 403 |
| II | 37:17-40:5 | Building layout and elevator:<br>    Testimony outside bounds of report. LR 26.4<br>    Not an expert in area of testimony. FRE 702<br>    Probative value outweighed by unfair prejudice. FRE 403 |

---

[1] The United States refers to the page and line numbers from the June 2, 2006 transcript of Epstein's videotaped trial testimony

| III | 21:19-22:8 | Lighting and glare:<br>　Testimony outside bounds of report. LR 26.4<br>　Probative value outweighed by unfair prejudice. FRE 403<br>　Lacks personal knowledge. FRE 602<br>　Not an expert in area of testimony. FRE 702 |
|---|---|---|
| IV | 34:24-36:4 | Price's disposition:<br>　Testimony outside bounds of report. LR 26.4<br>　Testimony is not relevant. FRE 402<br>　Lacks personal knowledge. FRE 602<br>　Not an expert in area of testimony. FRE 702<br>　Probative value outweighed by unfair prejudice. FRE 403 |

Epstein's trial testimony regarding the adequacy of the eye dilation warning that the East Boston Neighborhood Heath Center's Eye Clinic ("Eye Clinic") provided Judith Thibeau ("Mrs. Thibeau") falls outside of the four corners of his written report; therefore, the United States, pursuant to Loc. R. 26.4, moves to strike that testimony from the trial record.

Epstein's expert report does not address whether or not the Eye Clinic's standard eye dilation warning meets the standard of care for optometry.[2] And there is a good reason for that – until Epstein gave his video taped trial testimony on June 2, 2006, George and Judith Thibeau's ("Thibeau") civil action was solely about whether or not the Eye Clinic warned Mrs. Thibeau her eye sight may be compromised by the eye dilation procedure. Throughout this case, the Thibeau's asserted the Eye Clinic never warned Mrs. Thibeau eye dilation drops may compromise her eye sight. Indeed, the Thibeaus' go so far as to claim the Eye Clinic falsified

---

[2] The report only contains statements on the following topics: (1) the usual effects of dilation, (2) the practice of administering a dilation warning, (3) the absence of a warning constituting a breach of the standard of care, (4) a supposition that Thibeau's cataract in combination with the dilation may cause a loss of contrast sensitivity and depth perception, (5) a judgment that a <u>prudent optometrist should</u> administer an elevated warning, and (6) a judgment that an optometrist probably <u>should</u> have mentioned the existence of the elevator. (Epstein Report p. 1-2.)

Mrs. Thibeau's medical charts on two separate occasions by notating "dilation warning given." Under those circumstances, it would be non-sensible for the Thibeau's to employ Epstein to opine about the adequacy of a warning that they claim was never given. Epstein's report merely provides opinion about how someone's eyes could be compromised from eye dilation drops, and presumably the strategic value of that information is to emphasize how outrageous it would be if the Eye Clinic never warned Mrs. Thibeau.

Additionally, Epstein's own testimony demonstrates that his report was never meant to address whether Dr. Richard Prices' ("Dr. Price") standard eye dilation warning met the standard of care for an optimist. During cross examination, Epstein conceded he read the transcript of Dr. Price's deposition testimony for the first time on the same day Epstein provided his videotaped trial testimony. It is self evident that Epstein's report could not opine about whether or not the standard eye dilation warning Dr. Price testified he provided patients met the standard of care if he never read Dr. Price's testimony before he wrote that report. Furthermore, Epstein's report, and his testimony for that matter, could not possibility provide a credible opinion on whether the actual eye dilation warning Dr. Price gave to Mrs. Thibeau met the standard of care because no witness, including Mrs. Thibeau and Dr. Price, had a memory of the actual words used by Dr. Price.[3]

By authorizing the Court to preclude use of an expert's trial testimony at variance with his written report, Loc. R. 26.4(b)(2) provides the Court the means to protect a party from the

---

[3] Dr. Price testified that he typically told dilation patients that their eye sight will be blurry and sensitive to light, but he had no independent recollection of Mrs. Thibeau's eye examination on September 26, 2002. Mrs. Thibeau also testified she could not remember anything Dr. Price said during that eye examination.

unfair surprise and prejudice, which flows from not allowing time for adequate preparation to test the strength of that testimony through cross examination, case preparation, and employment of an opposing expert witness.  Moreover, that untested testimony, and the incomplete information that flows from it, increases the chances that the fact-finder's determination may be unjust and inaccurate.  In short, by striking expert testimony that strays from the four corners of his own written report, the court protects key values and goals of the civil justice system.

*Topic I - The Adequacy of the Warning and Essence of the Warning*

The testimony placed in the Topic I category are outside the scope of Epstein's report and should be stricken from the trial record.  Additionally, the probative value of the opinions expressed is outweighed by the prejudicial nature of the testimony.  The testimony not only relates to the contents of the warning, but also proffers a heightened standard beyond the scope of the recognized standard of care.  At no point does Epstein equate the higher standard he espouses with the standard required in the Massachusetts optometrists' community.[4]  The heightened standard proposed by Epstein can also confuse the Court; thus, unfairly prejudicing the outcome.  Pursuant to Federal Rule of Evidence ("FRE") 403, that testimony should be stricken.

*Topic II - Building Layout and Elevator*

Pursuant to LR 26.4, the testimony designated in Topic II, relates to the building layout and position of the elevator should also be stricken from the trial record because Epstein's testimony regarding the position of the elevator are not within the four corners of the report.

---

[4]*See Palandjian v. Foster*, 842 N.E.2d 916, 920 (Mass. 2006) ("[A] specialist should be held to the standard of care and skill of the average member of the profession [practicing] the specialty, taking into account the advances in the profession.").

Additionally, as an optometrist, Epstein has no special knowledge of signage, building layout, or elevators.  Under FRE 702, he does not qualify as an expert in these fields, thus, the testimony should be stricken.

Finally, Epstein's erroneous analysis of the location of the elevator is unfairly prejudicial when weighed against the probative value of his testimony.  An opinion from an expert in optometry who evaluates a photograph of an elevator only serves to confuse and prejudice the party his testimony is offered against.  Therefore, that testimony should be stricken from the record pursuant to FRE 403.

*Topic III - Lighting and Glare*

Epstein's testimony designated as Topic III relates to the lighting and glare in the Eye Clinic's stairwell.  Again, his written report makes no mention the lighting or glare in the Eye Clinic's stairwell; therefore, pursuant to LR 26.4(B)(2), that testimony should be stricken from the record.  Moreover, Epstein has not been certified as an expert on lighting and glare; under FRE 702, opinion of non-experts in the field is not permitted; therefore, that testimony should be stricken.

Additionally, prior to his trial testimony, he was merely shown a picture of the stairs at the Eye Clinic.  Without assessing the lighting and glare in person, it is impossible to make a credible conclusion relating to glare in the Eye Clinic's stairwell; therefore, pursuant to FRE 602 and FRE 403, that testimony should be stricken from the record.  Without a credible basis, the testimony carries no weight except to mislead the fact-finder and unfairly prejudice the party his testimony is offered against.

Finally, without examining Thibeau for glare sensitivity, Epstein lacks personal knowledge of Thibeau's condition as it related to glare because (1) he never personally assessed Mrs. Thibeau's eyes, (2) the medical record does not reflect Thibeau's sensitivity to glare, and (3) Dr. John Pietrantonio testified that some cataract patients experience improved vision with dilation and it is impossible to foresee how patients will react without individualized testing; therefore, pursuant to FRE 602, that testimony should be stricken.

*Topic IV - Price's Disposition*

The testimony relating to Price's demeanor[5] should be stricken because (1) the testimony is not in the report, (2) the statements are not relevant, (3) the statements are not based on personal knowledge, (4) Epstein is not an expert in behavior, (5) and the statements are unfairly prejudicial. Again, pursuant to LR 26.4, that testimony should be stricken from the record because Price's disposition is not within the contents of the report. Second, the testimony is irrelevant to the Thibeau's claims because Price's disposition during trial testimony does not make it more or less likely that he gave a dilation warning; thus, the testimony should not be permitted pursuant to FRE 402. Third, because Epstein never met Price nor did he view Price's video deposition, any opinion on Dr. Price's demeanor is not based on personal knowledge, pursuant to FRE 602.

Fourth, Epstein's expertise is only in optometric practice and care and not in behavioral sciences; under FRE 702, any evidence relating to Price's disposition should be stricken. Finally, testimony relating to Price's demeanor is meant to confuse the factfinder and should be

---

[5] This testimony is interspersed with the testimony of Topic I but is contained within Epstein Dep. 34:24-36:4.

stricken from the record pursuant to FRE 403 because the unfair prejudice outweighs the limited probative value.

*Conclusion*

For the foregoing reasons, Epstein's testimony set forth in Topics I-IV should be stricken from the trial record.

    Respectfully Submitted,

    United States of America
    By it's Attorney

    Michael J. Sullivan
    United States Attorney


    */s/Christopher Alberto*
    CHRISTOPHER ALBERTO
    Assistant United States Attorney
    1 Courthouse Way, Suite 9200
    Boston, MA 02210

## LOCAL RULE 7.1 CERTIFICATION

Undersigned counsel certifies that he has conferred with counsel for the plaintiff with regard to the issue raised by this motion.

    */s/Christopher Alberto*
    CHRISTOPHER ALBERTO
    Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Christopher Alberto, Assistant U.S. Attorney, hereby certify that the foregoing Motion for Order Quashing Subpoena, as well as the Memorandum of Law in Support of the Motion for Order Quashing Subpoena, were filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

    */s/ Christopher Alberto*
    CHRISTOPHER ALBERTO
Dated: July 21, 2006    Assistant U.S. Attorney