UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS


JUDITH THIBEAU                                                  Docket No. 04-10643MLW
and GEORGE THIBEAU,
           Plaintiffs,

v.

UNITED STATES OF AMERICA
and EAST BOSTON NEIGHBORHOOD
HEALTH CENTER CORPORATION
           Defendants.


**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF EXPERT'S TRIAL TESTIMONY'**


      Plaintiffs hereby state their opposition to defendant's motion to strike portions of the trial testimony of plaintiffs' expert witness Dr. Arthur Epstein.

Procedural Objections to Defendant's Motion

      First, the court should not consider the motion because it was filed one week past the deadline set by the court for its filing.

      Second, the court should not consider the motion because the defendant is asking the court to allow it to play by a different set of rules than those imposed on the plaintiffs. Specifically, defendant obtained expert opinion testimony from the eye clinic's director (Dr.

John Pietrantonio) even though the defendant never complied with Rule 26 of the Federal Rules of Civil Procedure, in that defendant never produced a report from Dr. Pietrantonio nor ever named him – or the substance of his expert opinion testimony – in answer to plaintiffs' expert interrogatories.

Fundamental Objections to Defendant's Motion

In general defendant has argued that the testimony is inadmissible under Federal Rule of Evidence [hereinafter referred to as FRAP] 403. That rule states:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The thrust of this rule is to exclude evidence from a jury's consideration, when such evidence might create unfair prejudice, confuse the issues or mislead the jury. The fact that the wording of the rule includes the phrase "misleading the jury" confirms that the purpose of the rule is to exclude evidence that might create prejudice by confusing or misleading the jury. In essence, the trial judge becomes the gatekeeper of evidence, to protect the jury from possible confusion.

The overall thrust of defendant's objection to Dr. Epstein's testimony is that it creates the risk of undue prejudice and confusion. Such an objection would be more appropriate if the case were tried to a jury. In the instant case there is no jury. The court has heard all of the evidence and is fully capable of weighing such evidence, and giving proper weight to the testimonial and

documentary evidence before it. This is exactly the situation where the objection to the evidence in question is really to the weight and not the admissibility of such evidence. The court is fully capable of giving the evidence its proper probative value and is not at risk of being unfairly prejudiced by the evidence. Furthermore consideration and admission of Dr. Epstein's testimony and report pose no risk of undue delay, waste of time, or needless presentation of cumulative evidence. The testimony which the court heard took approximately one hour and therefore did not cause any undue delay. Nor was this testimony a waste of time. The information contained in that testimony was relevant and helpful to the court in that it served to educate the court as to the actual effects of eye dilation and the risks that such side effects created for patients like Ms. Thibeau. This information was not addressed by any other witness for the plaintiff and was therefore not unnecessarily cumulative.

To the extent that defendant objects on the basis that the testimony addressed issues outside of the bounds of the experts report that objection is not well founded, except for Dr. Epstein's comments on the testimony of Richard Price. The subjects of building layout and elevator and lighting and glare were raised and discussed in Dr. Epstein's report. His testimony gave more substance to the findings and opinions set forth in his report; but did not raise new issues or necessarily give new opinions; and therefore could not have surprised or prejudiced the defendant or its counsel. No expert will ever merely repeat his/her report in trial testimony. The purpose of revealing an expert's report before that expert testifies is to give fair notice to opposing counsel of the essence of the expert's opinion and the basis of such opinion, so as to give opposing counsel adequate opportunity to prepare for cross examination. Dr. Epstein's

report accomplished just that purpose; and therefore his testimony should not be stricken for going outside the four corners of his report.

Adequacy and Essence of Warning

Much of Dr. Epstein's testimony regarding the appropriateness of the warning that should have been given to Ms. Thibeau amounts to an explanation of the reasons for and the importance of such warnings. Defense counsel is essentially objecting to the thoroughness of Dr. Epstein's analysis and explanation. A thorough opinion is not inadmissible due to its thoroughness. Such testimony is appropriate for an expert witness to help educate the fact finder. Dr. Epstein never testified that the eye clinic should be held to a higher standard of care than that of the average member of the profession – especially when taking into account the advances in the profession. Furthermore, Dr. Epstein's testimony helps to educate the fact finder as to the adequacy of warnings that should be given to patients whose eyes have been dilated and who then have to walk down two flights of stairs – which by their nature present a dangerous condition to the patient whose eyesight is significantly impaired due to what Dr. Epstein has explained to be the expected common side effects of dilation. In effect Dr. Epstein's testimony highlights the need for a more thorough warning about the expected side effects of dilation in conjunction with the foreseeable risk of harm that those side effects pose to the dilated patient who has to walk down two flights of stairs such as those located at the eye clinic. The fact that Dr. Epstein has an opinion about the importance of such warning in light of the fact that dilated patients then have to walk down stairs (which have now have forseeably become a dangerous condition to the dilated patient) does not make that opinion inadmissible.

Furthermore, as noted throughout this opposition the probative value of Dr. Epstein's testimony is not outweighed by its possibly prejudicial nature; because there is no jury that the court has to protect from being confused and misled.  Dr. Epstein's testimony is relevant.  Any objection to his testimony regarding warnings goes to the weight of the evidence and not its admissibility.  Also, all of his statements and opinions about warnings were clearly set forth in his report which had been provided to defense counsel long before trial.

Elevator and Building Layout

Defendant objects to certain portions of Dr. Epstein's testimony as to his impression of the elevator and the layout of the eye clinic building.  It is conceded that Dr. Epstein is not a building expert or an architect, and that much is already clear to the court.  Furthermore, the photographs of the eye clinic, the stairs and the elevator all speak for themselves anyway.  The court is fully capable of viewing these photographs and making its own assessments of the premises as they appear in the photographs and as they would appear (or not appear) to a person such as the plaintiff whose eyesight was significantly compromised by being blurry, sensitive to glare, unable to detect contrasts and otherwise disoriented.  Dr. Epstein's comments on the elevator do not carry a risk of confusing or misleading the fact finder.  The court may give this particular testimony less weight if the court determines that the testimony is outside the scope of Dr. Epstein's expertise as an optometrist.  However, in weighing this evidence the court must also remember Dr. Epstein's many years of experience with patients with diminished and compromised eyesight, and his management of his own offices and knowledge of his patients'

experiences with the layout of such offices. This experience gives Dr. Epstein a basis to comment on the elevator, building layout and signage; and gives such testimony weight beyond that of a non-expert witness.

Glare

The same argument holds true for the testimony that Epstein offered regarding the white walls alongside the stairs that are depicted in various photographs. The photographs themselves were admissible and were admitted into evidence. Those photographs depict the stairs and the walls. Dr. Epstein did not measure the lighting on those stairs nor did he testify to specific lighting levels. Instead he assessed the possible glare based on those photographs. The photographs are sufficient foundation for making the generalized conclusions that Epstein made. The statements made by Epstein regarding glare and the effect of dilation on causing a problem with glare were fully set forth in his report; and are within the scope of his expertise as a doctor of optometry. Further, Epstein never quantified the degree to which Ms. Thibeau was more sensitive to glare but merely stated that she was more sensitive to glare due to dilation. There is no question that dilation makes patients more sensitive to glare, including patients such as Ms. Thibeau.

Price's Disposition

With regard to Epstein's testimony regarding Richard Price's description of the substance of his usual warnings regarding eye dilation and how he gave such warnings, such testimony was

not addressed in his report.  However, Dr. Epstein's report was written and produced to defense counsel well before Price gave his video testimony.  Furthermore, Dr. Epstein's report speaks in large part to the substance of warnings that should have been given to Ms. Thibeau; and it should not have been any surprise to defense counsel that Epstein would have been asked to comment on the warnings that Price thought he might (but was not sure) have given.  The court is fully capable of weighing this testimony of Dr. Epstein and comparing it to the testimony of Price

With regard to Dr. Epstein's testimony that touches on Dr. Price's disposition, such testimony is a minor part of Dr. Epstein's overall testimony.  It is obvious that Dr. Epstein is not a psychologist or an expert whose specialty is human behavior.  However, his testimony and comments on Price's disposition and the way Price says that he gave warnings is based in part on Dr. Epstein's many years of experience as a practicing optometrist.  Furthermore, Dr. Epstein's testimony in this area has relevance because it focuses the court's attention on the importance of the eye clinic's overall awareness of the condition of Ms. Thibeau, its awareness and knowledge of the side effects of dilation in conjunction with the environment that Ms. Thibeau had to negotiate after dilation and the lack of insight and awareness that Price had to the necessity of warning Ms. Thibeau of foreseeable risks of harm.  This is the key issue in this case; and therefore Dr. Epstein's comments on Price's alleged warnings are relevant and admissible.  Defense counsel could not have been surprised or caught off guard by such testimony since these issues had been before the court from the very beginning of the case [and are even mentioned in some detail at the very beginning of the case in plaintiff's complaint].

CONCLUSION

For all of the above reasons this court should deny defendant's motion to strike portions of Dr. Epstein's trial testimony.

Plaintiffs,
Judith and George Thibeau,
by their attorney,

/s/ James L. Frederick
James L. Frederick, Esq.
BBO #543597
Koufman & Frederick, LLP
1330 Beacon Street, Suite 311
Brookline, MA 02446-3202
